VIRGIL D. DUTT, Appellant and Cross-Respondent, v. RICHARD E. KREMP, M.D.; RAYMOND L. SWARTS, M.D.; PAUL S. CLARK, M.D.; and DAVID C. JOHNSON, M.D., Respondents and Cross-Appellants.

No. 22329

December 22, 1992 844 P.2d 786

*Wait & Shaffer,* Reno and *Lillick & Charles* and *Tristam B. Brown* and *James J. Corbelli,* San Francisco, for Appellant/Cross-Respondent.

*Carl M. Hebert,* Reno, for Respondents/Cross-Appellants.

## OPINION

By the Court, MOWBRAY, C. J.:

### THE FACTS

In the winter of 1985, respondents, physicians affiliated with Saint Mary's Hospital in Reno, treated Jack Rentnelli for a brain illness. Believing that he had not received proper medical care from respondents, Rentnelli contacted appellant Virgil Dutt, an attorney, about bringing a medical malpractice lawsuit.

Appellant and his legal assistant evaluated Rentnelli's claim, interviewing Rentnelli and his family members, obtaining and reviewing Rentnelli's medical records, and researching pertinent medical and legal authorities. Appellant also spoke with another attorney, experienced in medical malpractice litigation, who told him that Rentnelli's claim had merit. Ultimately concluding that there were grounds to bring a medical malpractice action, appellant filed a complaint against respondents.

In response to the complaint, appellant received a letter from respondent Dr. David C. Johnson in which Dr. Johnson vigorously defended the medical treatment given to Rentnelli and opined that the malpractice claim was groundless. Dr. Johnson also warned appellant that if Rentnelli should further pursue the claim, he would consider such action to be an abuse of process and "unreasonable litigation."

Appellant answered Dr. Johnson with a letter of his own, in which he replied, "I have become aware that there exist several

services which analyze a medical malpractice case and advise whether or not we are completely off base. I am in the process of selecting one of these organizations and will be more than happy to abide by their advice." In accordance with this letter, appellant submitted the records of Rentnelli's treatment to the Medical Quality Foundation.

On September 11, 1986, the Medical Quality Foundation produced a report concluding that "no provable negligence" could be found in respondents' treatment of Rentnelli. Appellant, with the consent of Rentnelli, then voluntarily dismissed the complaint.

In spite of this dismissal, respondents filed a complaint for malicious prosecution and abuse of process against appellant and Rentnelli. After a flurry of pre-trial motions, trial began on August 20, 1990. At the close of respondents' case in chief, Rentnelli and appellant moved for involuntary dismissals; the trial court granted Rentnelli's motion but denied appellant's. On August 29, 1990, the jury returned a verdict for respondents, and the district court entered judgment accordingly.[1] After denying several post-trial motions brought by the parties, the district court entered an amended judgment on March 7, 1991. This appeal and cross-appeal followed.

## DISCUSSION

## I. MALICIOUS PROSECUTION

### A. Probable Cause

The elements that must be proved in a malicious prosecution action are the following: (1) a lack of probable cause to commence the prior action; (2) malice; (3) favorable termination of the prior action; and (4) damages. *See* Chapman v. City of Reno, 85 Nev. 365, 455 P.2d 618 (1969). The first question presented in this appeal is whether, as appellant contends, the trial court erred by refusing to rule on the issue of probable cause.

When there is no dispute as to the facts upon which an attorney acted in filing the prior action, the question whether there was probable cause to institute the prior action is purely a legal question to be answered by the court. Bonamy v. Zenoff, 77 Nev. 250, 362 P.2d 445 (1961). In Sheldon Appel Co. v. Albert & Oliker, 765 P.2d 498, 504 (Cal. 1989), the California Supreme

---

[1]The jury awarded $15,000.00 to Dr. Swarts, $5,000.00 to Dr. Johnson, $15,000.00 to Dr. Kremp, and $5,000.00 to Dr. Clark.

Court offered a persuasive rationale for the requirement that the court, rather than the jury, determines the existence of probable cause:

> The question whether, on a given set of facts, there was probable cause to institute an action requires a sensitive evaluation of legal principles and precedents, a task generally beyond the ken of lay jurors, and courts have recognized that there is a significant danger that jurors may not sufficiently appreciate the distinction between a merely unsuccessful and a legally untenable claim. To avoid improperly deterring individuals from resorting to the courts for the resolution of disputes, the common law affords litigants the assurance that tort liability will not be imposed for filing a lawsuit unless *a court* subsequently determines that the institution of the action was without probable cause.

Here, because the facts upon which appellant relied in filing the prior action are undisputed, the existence of probable cause was a purely legal question which should have been answered explicitly by the district court. Yet, despite appellant's repeated requests that it rule on the existence of probable cause, the district court refused to take the issue from the jury. Instead, the district court submitted the issue to the jury, as evidenced by the following jury instruction:

> In a malicious prosecution action against an attorney, the test for "probable cause" is an objective one. Significant issues include what facts were known to the attorney, and whether those facts made the lawsuit tenable. The attorney's subjective belief as to the merits of the case is relevant and admissible on the issue of malice.

We hold that the district court erred in submitting the issue of probable cause to the jury.

Nevertheless, because the existence of probable cause is a purely legal question and the material facts have been fully developed in the trial court and are undisputed, we need not remand this matter to the district court for a determination. *See* Nyberg v. Kirby, 65 Nev. 42, 67-68, 188 P.2d 1006, 1018 (1948), *reh'g denied,* 65 Nev. 78, 193 P.2d 850 (1948). Instead, we shall resolve the determinative legal question here on appeal. *See* Pink v. Busch, 100 Nev. 684, 691 P.2d 456 (1984).

This court has not yet enunciated a test for determining whether the facts known to the attorney constitute probable cause

for filing the underlying action. After considering the approaches of other jurisdictions, we have concluded that the test set forth by the California Supreme Court in *Sheldon Appel Co.* is most appropriate. Under this test, when the facts known by the attorney are not in dispute, the court must determine whether, on the basis of these facts, any *reasonable* attorney would have thought that the institution of the prior action was *legally tenable.* *Sheldon Appel Co.,* 765 P.2d at 511 (emphasis added). The standard is an objective one; it does not permit the court to consider whether the attorney subjectively believed that the prior action was legally tenable. Moreover, the adequacy of an attorney's research is not relevant to the probable cause determination, *id.* at 510, and an attorney is entitled to rely entirely on what his client told him when deciding whether there is probable cause to file a lawsuit. Lucero v. Stewart, 892 F.2d 52, 54 (9th Cir. 1989) (construing *Sheldon Appel Co.*). We adopt the *Sheldon Appel Co.* test for our jurisdiction, and, in doing so, we reaffirm the principle that an attorney's role is to facilitate access to our judicial system for any person seeking legal relief.

We conclude that, under the *Sheldon Appel Co.* test, a reasonable attorney, relying upon facts learned from reviewing Rentnelli's medical records, researching medical literature, and interviewing Rentnelli and his son, could have concluded that a tenable claim of medical malpractice existed against respondents.[2]

### B. Malice

As noted above, malice is an element of a cause of a malicious prosecution action. Although the existence of probable cause is fatal to respondents' malicious prosecution claim, we believe that a discussion of malice would be useful to the parties, our lower courts and our practitioners.

---

[2]A person may also be held liable for malicious prosecution for wrongfully continuing a civil proceeding without probable cause. Nelson v. Miller, 607 P.2d 438, 443 (Kan. 1980). This theory was presented to the jury below, and respondents contend that the jury's verdict can be sustained on the basis of this theory.

We disagree. The evidence adduced below does not support a finding against appellant on this theory. Appellant received the Medical Quality Foundation's report on September 16, 1986, and the very next day, he prepared a stipulation for dismissal. Moreover, after receiving the report, appellant neither initiated further proceedings in the case nor conveyed any formal settlement demands to respondents. In our view, this evidence conclusively shows that appellant discontinued the proceedings once he learned that there was no probable cause for Rentnelli's malpractice claim.

Appellant contends that there was insufficient evidence to support the jury's finding that he acted with malice and that therefore his motion for judgment notwithstanding the verdict should have been granted. According to appellant, the record contains no evidence suggesting that he sought anything other than a full adjudication of Rentnelli's claim. Moreover, appellant submits, the absence of malice is demonstrated by his dismissal of the malpractice action when he became convinced that there was no basis for the lawsuit. We are persuaded by appellant's argument.

The malice element of malicious prosecution relates to the subjective intent or purpose with which the defendant acted in initiating the prior action; and the defendant's motivation is a question of fact to be determined by the jury. *Sheldon Appel Co.,* 765 P.2d at 503. The Restatement (Second) of Torts § 676 (1977) defines the malice element as "propriety of purpose":

> To subject a person to liability for wrongful civil proceedings, the proceedings must have been initiated or continued primarily for a purpose other than that of securing the proper adjudication of the claim on which they are based.

Under the *Sheldon Appel Co.* formula, the extent of a defendant attorney's investigation and research is relevant to the question of whether the attorney acted with malice. *Sheldon Appel Co.,* 765 P.2d at 510.

We find the record bereft of direct evidence from which the jury could conclude that appellant acted with malice. As respondents correctly observe, however, malice may be inferred from proof showing a lack of probable cause. *See Chapman,* 85 Nev. at 369, 455 P.2d at 620. Even so, we believe that to infer malice from the evidence showing a lack of probable cause, the defendant's pre-filing behavior must have been clearly unreasonable. *See* Grindle v. Lorbeer, 242 Cal.Rptr. 562 (Cal.Ct.App. 1987).

In *Grindle,* before filing the underlying lawsuit for negligent operation of a golf cart, the defendant attorney reviewed a file and a memo prepared by a law clerk summarizing the facts of the case; the attorney also relied on his own knowledge of golf carts. Although the court concluded that the attorney might have been careless, it also concluded that the research was adequate and that there was no evidence of indifference or malice. *Id.* at 566. In addition, the court declined to infer malice because the attorney dismissed the case almost immediately after determining that it lacked merit. The court concluded that the attorney's conduct was consistent with a finding that he filed the lawsuit in the good faith belief that it had merit, and discontinued it upon realizing that it lacked merit. *Id.*

Like the defendant attorney in *Grindle,* appellant in the present case reviewed his client's file, conducted research and dismissed the case soon after discovering that it lacked merit. Appellant also interviewed Rentnelli's family members and spoke with an attorney experienced in medical malpractice litigation. If anything, appellant's investigation was more thorough than that of the attorney in *Grindle.* Thus, we hold that the evidence does not support an inference that appellant acted with malice.

## II. Abuse of Process

At the close of trial, appellant moved for a directed verdict and for judgment notwithstanding the verdict or, in the alternative, for a new trial on the grounds that there was no evidence to support a verdict in favor of respondents on their abuse of process claim. The trial court denied these motions, and appellant contends that the court erred in doing so. We agree with appellant.

An abuse of process claim consists of two elements: (1) an ulterior purpose other than resolving a legal dispute, and (2) a willful act in the use of process not proper in the regular conduct of the proceeding. Kovacs v. Acosta, 106 Nev. 57, 787 P.2d 368 (1990). An "ulterior purpose" is any "improper motive" underlying the issuance of legal process. Laxalt v. McClatchy, 622 F.Supp. 737, 751 (D.Nev. 1985). At trial, respondents assigned two improper motives to appellant.

Respondents first argued that appellant and Rentnelli filed the malpractice action in an effort to avoid paying the bill for medical services provided by respondents. In our view, however, the evidence marshalled by respondents in support of this argument is not persuasive. Moreover, as appellant correctly contends, a desire to avoid paying fees for what are, at the time, perceived to be negligent medical services is not an improper motive. Finally, this improper motive, if it existed at all, was more Rentnelli's than appellant's and, as noted above, the trial court granted Rentnelli's motion for involuntary dismissal.

Respondents also asserted that appellant filed the malpractice action to coerce a nuisance settlement. *See* Bull v. McCuskey, 96 Nev. 706, 615 P.2d 957 (1980), *overruled in part on other grounds by* Ace Truck v. Kahn, 103 Nev. 503, 746 P.2d 132 (1987). According to respondents, this improper motive was demonstrated by appellant's attempt, after obtaining the Medical Quality Foundation's report, to negotiate a settlement with the

lawyer for one of the respondents. Again, however, we find respondents' evidence unconvincing. Unlike the defendant attorney in *Bull,* appellant made no formal demand for settlement and presented no specific monetary figures. Indeed, appellant dismissed the complaint shortly after receiving the Medical Quality Foundation's report. Thus, we conclude that there is insufficient evidence to support a finding that appellant filed the malpractice action to coerce a nuisance settlement.

Because we hold that appellant harbored no ulterior purpose other than resolving Rentnelli's apparent malpractice dispute with respondent, we need not consider the second element of an abuse of process claim, namely, whether appellant engaged in a willful act in the use of process not proper in the regular conduct of the proceeding.[3]

The dissenting author's advocacy on behalf of the medical establishment, while characteristically turgid, is laudable, as are his past efforts on behalf of gaming concerns, business and industry, and assorted insurance companies. One is nigh moved to tears by these chronicles of destitution, misery and exploitation of the privileged few by the wicked little people.

Mr. JUSTICE STEFFEN, the world is not as you see it. I remind you that all persons—not just society's "winners"—are equal before the judicial courts of this land. I also urge you to open your eyes to the practical consequences of your rarified legal analysis; People suffer unjustly when they are fired from their jobs for little or no reason or when they are denied insurance coverage based on an arcane reading of some hidden policy exclusion. With respect to the rule you advocate today, it would undoubtedly discourage ordinary citizens from bringing a civil wrong to a court's attention or, for that matter, reporting criminal conduct. Finally, I suggest to you that the judicial task requires far more than sterile analytic skill; one needs compassion, humility, grace and, at times, mercy and the ability to forgive. In short, the judicial craft, as well as the law itself, demands a heart.

## CONCLUSION

For the reasons set forth above, we reverse the judgment entered below, and we remand this case to the district court for entry of judgment in favor of appellant.

YOUNG, J., concur.

---

[3]On the cross-appeal, respondents contend that the district court erred both in denying their motion to pass Rentnelli's costs on to appellant and in rejecting their amended memorandum of costs. These contentions are now moot, given that respondents, because of our reversal of the judgment entered below, are no longer the prevailing parties.

SPRINGER, J., concurring:

I have heretofore filed an order, ordering that the clerk strike my name from the majority opinion filed in this case because CHIEF JUSTICE MOWBRAY altered the original without my knowledge and inserted offensive material critical of JUSTICE THOMAS STEFFEN with which I strongly disagree. I agree with the decision of the plurality of JUSTICES MOWBRAY and YOUNG; hence, I concur in the result of that opinion only and not with the opinion itself.

STEFFEN, J., with whom ROSE, J., agrees, dissenting:

I am persuaded that the trial evidence supports the verdict reached by the jury and that the result and substance of the majority opinion are incorrect. I am therefore constrained to dissent.

If we were reviewing a judgment against a member of the medical profession for medical malpractice on equivalent facts, I have no doubt that the judgment would be upheld. Consider our hypothetical physician who, after listening to the complaints of a patient, reaches a diagnosis in an area outside his or her area of expertise without even performing a meaningful medical evaluation. Moreover, our hypothetical physician disdains a consultation, deciding to forge ahead on the basis of an unconfirmed suspicion derived almost entirely from the verbalized complaints of the patient. Finally, the uninformed physician performs unnecessary and unsuccessful surgery. Accountability for medical malpractice under those circumstances would be both predictable and justified.

In the instant case, attorney Dutt filed a thoroughly inadequate complaint against numerous doctors and a hospital two days before the effective date of a statute that would have required Dutt to file a complaint with a medical-legal screening panel.[1] The purpose for which the screening panel procedure was enacted is to discourage or minimize the filing of medical malpractice actions that are lacking in merit. The benefits of such a screening procedure are obvious: lower medical malpractice insurance rates (insurance costs are always passed on to the patients), less diversion of limited medical resources to defend against unwarranted litigation, enlightenment to attorneys inexperienced in complex medical malpractice cases, and a decreased toll on physicians and their reputations that would otherwise result from unmeritorious malpractice actions, to name but a few. According to attorney Dutt, the instant action was the first time he had ever filed a civil complaint for medical malpractice.

---

[1] Dutt was not faced with a statute of limitations problem at the time he filed Rentnelli's complaint.

Prior to filing the complaint, Dutt assigned a law school graduate who worked for him to read the medical records and evaluate them with him. Dutt testified that he relied on the law school graduate's "opinions and recommendations as to what was in the [medical] records and how to interpret them."[2] Dutt contacted no physicians prior to filing the complaint. He did not even bother to contact the physicians who succeeded the respondent physicians in caring for his client. Moreover, at no time prior to filing the complaint did he have a qualified health care provider or physician review the medical records to determine whether a cause of action for medical malpractice existed. In short, there had been no responsible preparation undertaken to determine whether malpractice had occurred before Dutt filed the complaint.

Additionally, Dutt was irresponsible in his response to discovery, denying requests for admissions instead of forthrightly admitting the truth of the requests. As a result, respondent physicians' counsel was forced to depose a California physician, Dr. Domz, whom Dutt identified as having information concerning the respondent physicians' negligence. Dutt did not even bother to appear at the taking of Dr. Domz's deposition. Moreover, Dr. Domz, who testified during his deposition that he had no criticism of respondent physicians' treatment of Dutt's client, had never been contacted by Dutt, either before Dutt prepared the answer to interrogatory noted above for his client's signature, or at any time thereafter. Furthermore, almost two months after Dr. Domz was deposed, Dutt wrote Al Pagni, attorney for three of the respondent physicians, and informed him that he had told Dr. Kremp's attorney that he would not dismiss the action "until after the depositions came back in the event that Dr. Domz did suggest that the treatment did not meet the standard of care that one should expect from this area." Although Dutt did not have sufficient belief that Dr. Domz would testify negatively about the respondent physicians to prompt him to undertake the expense of attending the California physician's deposition, he clearly hoped that something might turn up that would provide a liability peg on which to hang his hat.

Finally, with no medical evidence, testimony or evaluation that

---

[2]The majority opinion states that Dutt spoke with an attorney "experienced in medical malpractice litigation," prior to filing the action, who told him that Rentnelli's claim had merit. I find no evidence in the record to support such an assumption. The record simply reflects testimony by Dutt, over his counsel's objection, that he talked to an attorney (the name of the attorney was given, but there was no testimony concerning his experience, if any, in the area of medical malpractice) who told him Rentnelli's case had merit.

would support his cryptic complaint against the Reno team of physicians, Dutt still attempted to effectuate a nuisance settlement with attorney Osborne, counsel for Dr. Kremp.

Doubly troubling in this case is the fact that it appears from the record that the respondent doctors were especially vigilant and effective in their treatment and care of Dutt's client despite Dutt's flippant testimony at trial ascribing their successful and difficult diagnosis to luck. In fine, it appears that the physicians sued by Dutt effectively and skillfully applied their expertise and care in treating Dutt's client, and were rewarded by the filing of Dutt's ill-advised and desultory complaint.

On these facts, it is little wonder that the respondent physicians insisted on having their efforts and their reputations vindicated in a trial against their uninformed, precipitant tormentor, attorney Dutt. I suggest that there is also little cause to wonder why the jury provided the respondent physicians with the vindication they sought from the civil justice system.

If society is to have any confidence in the legal system and the administration of justice within our courts, there must be an accountability for derelict lawyers that is equal to the level of accountability we impose on derelict physicians and other professionals. As I view this record, the evidence strongly supports the jury's findings against Dutt. Plainly stated, the jury, by its verdict, announced that lawyers are not privileged to assail the reputation of physicians in court and subject them to the trauma and cost of a lawsuit with its concomitant attenuation of professional standing without reasonable cause.

Turning not to certain aspects of the majority's legal analysis, I note first my disagreement with the majority's conclusions regarding probable cause and the role it played in this case. The majority endorses for adoption in Nevada the probable cause rule announced in Sheldon Appel Co. v. Albert & Oliker, 765 P.2d 498 (Cal. 1989). With due respect to the California Supreme Court, I do not find its reasoning either sound or persuasive on the point. In adopting an "objectively tenable" standard for determining probable cause, the *Sheldon Appel Co.* court concluded that "the adequacy of an attorney's research is not relevant to the probable cause determination." *Id.* at 510. In so ruling, the California court disapproved dictum in Tool Research & Engineering Corp. v. Henigson, 120 Cal.Rptr. 291 (Ct.App. 1975), to the effect that "an attorney's reasonable investigation and industrious search of legal authority is an essential component of probable cause." *Id.* at 509.

It appears to me that the *Sheldon Appel Co.* rule is in essence a rule of happenstance. In other words, if, in evaluating the issue of

probable cause, a court concludes that the action was objectively tenable when filed, then there is a proper basis for finding probable cause for filing the action despite a provable condition of complete ignorance on the part of the plaintiff's attorney regarding the merits of the action when the complaint was filed. I am of the opinion that the "objectively tenable" rule adopted in *Sheldon Appel Co.* tends to reward indolence, ignorance, indifference or exploitiveness by focusing on the ability of the defendant attorney and his counsel to produce, *after the fact,* a semblance of objective tenability that would satisfy the probable cause standard of the California court.

I am persuaded that the rule embraced by the Supreme Court of Arizona in Bradshaw v. State Farm Mut. Auto. Ins., 758 P.2d 1313 (Ariz. 1988), is more appropriate. Holding that the test for probable cause is both subjective and objective, the *Bradshaw* court stated that "[t]he initiator of the action must honestly *believe* in its possible merits; and, in light of the facts, that *belief must be objectively reasonable." Id.* at 1319 (*citing* Haswell v. Liberty Mutual Insurance Co., 557 S.W.2d 628, 633 (Mo. 1977)); Restatement § 675 comment c; PROSSER & KEETON ON THE LAW OF TORTS (5th ed. 1984) § 120, at 893 (emphasis in original text).

Under the *Bradshaw* view, an inexperienced attorney's failure to research, consult, interview and meaningfully prepare before filing a complaint would be relevant in determining whether the attorney could have entertained an honest belief in the possible merits of his or her client's cause of action. Moreover, the second prong of the *Bradshaw* test requires that the attorney's honest belief be objectively reasonable. The latter test thus becomes a form of validation of the former. Assuming the attorney has a modicum of legal ability that has been adequately focused on meaningful research and evaluation, it is logical to expect that the attorney's honest belief regarding the merits of the client's cause of action will be endowed with an aspect of objective reasonability.[3]

Moreover, at least in the more esoteric and complex areas of litigation, such as medical malpractice, I disagree with both the majority and the *Sheldon Appel Co.* court in concluding that an

---

[3]I note, as did the *Bradshaw* court with regard to the Arizona rule, that the subjective-objective test is consonant with NRCP Rule 11 which forbids the filing of groundless actions by requiring an attorney to certify, by his or her signature, that "he or she has read the pleading . . . [and] that to the best of his or her knowledge, information and belief, *formed after reasonable inquiry under the circumstances obtaining at the time of the signature, that it is well grounded in fact and is warranted by existing law . . . and that it is not interposed for any improper purpose . . . ."*

attorney is entitled to rely entirely on what the client has said in determining whether there is probable cause to file an action. A client may, without any knowledge of the adequacy of his or her medical treatment, tell the attorney that the physician negligently treated him, describing the basis for his or her opinion. An attorney inexperienced in medical malpractice litigation may be as ignorant as the client with respect to the quality of the medical services provided by the client's physician. Under the view espoused by the majority, the uninformed attorney need not look beyond the client's perspective in determining whether there is probable cause to file a lawsuit. I believe such a view denigrates both the legal profession and the lawyers within the profession who are expected to apply enlightened understanding and analysis to a client's problems and concerns. *See* Nelson v. Miller, 607 P.2d 438, 448 (Kan. 1980).

If a client describes a simple battery to his or her attorney, it could be argued that the attorney may have probable cause to file an action against the alleged tortfeasor on the basis of what appears to be an honest factual recital by the client. In such a case, it is at least arguable that the rule adopted by the majority might be justified. In most medical malpractice cases, however, research and diligent inquiry and preparation are essential to an honest conclusion that probable cause exists for the filing of a complaint. I therefore take issue with the blanket rule adopted by the majority in the instant case.[4]

I fully agree with both the *Sheldon Appel Co.* and *Bradshaw* courts that when the operative facts are not in dispute, the issue of probable cause is an issue of law to be decided by the court. I also agree with the *Bradshaw* ruling that when the operative facts are in dispute, the trial court may, by special verdict form or by a hypothetical jury instruction, provide guidance to the jury as to what facts will constitute probable cause. *Bradshaw,* 758 P.2d at 1321.

The majority concludes, and I agree, that the operative facts in this case are not in dispute and that the district court should have ruled on the issue of probable cause as a matter of law. Based upon my review of the record, however, I must agree with respondents that the district court impliedly ruled in their favor on the issue of probable cause. The issue was fully discussed by

---

[4]NRS 41A.016 now requires all medical malpractice complaints to be filed in the first instance with a screening panel for a determination on the merits. The complaint so filed must contain a clear and concise statement of the facts and other circumstances relevant to the alleged malpractice. As a salutary consequence, the prospects for recurring actions of the type presented by the instant case should be minimized.

the parties at trial, and the trial judge refused to grant an NRCP 41(b) motion to dismiss at the conclusion of plaintiffs' case, ruling that plaintiffs had "made out a prima facia case." The trial judge also rejected Dutt's motion for a directed verdict at the conclusion of the evidence. In any event, my review of the record leads me to conclude, contrary to the majority's determination, that as a matter of law, Dutt did not have probable cause to file the lawsuit even under the *Sheldon Appel Co.* standard. I have previously recounted the numerous derelictions surrounding the filing of the complaint and will only observe here that if, as the majority concludes, there was probable cause for Dutt's lawsuit, there would appear to be little basis for ever holding attorneys legally accountable for the filing of frivolous medical malpractice claims.

Needless to say, I also disagree with the majority's ruling on the issue of malice. A jury may infer malice from an absence of probable cause, *Nelson,* 607 P.2d at 445, and as previously observed, I find ample evidence in the record undermining the majority's recognition of probable cause. Moreover, I again emphasize that in my view, there is no basis for concluding that Dutt's pre-filing behavior and preparation were reasonable. In any event, the record as I read it, provides ample support for the jury's finding of malice.

I suggest that the record also provides a factual basis for liability resulting from abuse of process. Dutt's attempt to secure a settlement after he was thoroughly disabused of the possibility of negligence on the part of respondents is discounted by the majority because the settlement attempt was unadorned by a "formal demand" or a "specific" monetary figure. I am unable to discern in the majority's characterization of the evidence any basis for casting aside the jury's verdict.

For the reasons abbreviated above, I would endorse the jury's verdict and affirm the judgment entered pursuant thereto. I therefore respectfully dissent.