STATE INDUSTRIAL INSURANCE SYSTEM, an Agency of the State of Nevada, Appellant, v. JOHN CAMPBELL, Respondent.

No. 22409

December 22, 1992                                    844 P.2d 795

*R. Scott Young*, General Counsel and *William A. Zeigler*, Associate General Counsel, Carson City, for Appellant.

*Marvin S. Gross*, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

The sole issue on appeal is whether temporary total disability benefits may be suspended during the time in which a claimant is incarcerated. Absent legislation to the contrary, we hold that they may not.

### THE FACTS

The facts in this case are undisputed. John Campbell sustained a compensable industrial injury on August 11, 1988, while working as a brick layer at Cedco, Inc. Campbell qualified for temporary total disability benefits and was referred to the Jean Hanna Clark Rehabilitation Center for treatment. On August 4, 1989, Campbell's treating physician, William Harris, M.D., recommended that Campbell be discharged from the rehabilitation center and given a comprehensive integrated work-up ("CIW") to evaluate the extent of his disability.

The State Industrial Insurance System ("SIIS") notified Campbell by letter, dated October 12, 1989, that a CIW had been scheduled for him on October 30, 1989, in Reno, Nevada. Shortly thereafter, SIIS was advised that Campbell would be unable to attend the CIW because he had recently been incarcerated.[1] SIIS subsequently advised Campbell that his temporary total disability benefits would be suspended pending completion of the CIW.

On May 1, 1990, a hearing officer entered a decision affirming the suspension of Campbell's benefits. Campbell was released from prison on September 17, 1990, and testified as the only witness at the hearing before the appeals officer on October 8,

---

[1]Campbell had previously been sentenced to four and one-half years of probation following a burglary committed in 1983. Campbell was charged with violating his probation in September of 1989 following a domestic dispute. Consequently, Campbell was sent to the state penitentiary for a period of one year.

1990. On November 9, 1990, the appeals officer reversed, and ordered SIIS to retroactively pay Campbell all suspended benefits. The district court agreed and denied a SIIS petition for judicial review.

## DISCUSSION

In reviewing a decision by an administrative officer, an appellate court may not substitute its judgment for that of the officer as to the weight of evidence on questions of fact. Nevada Indus. Comm'n v. Hildebrand, 100 Nev. 47, 52, 675 P.2d 401, 404 (1984); NRS 233B.135(3). However, this court may "undertake independent review of the administrative construction of a statute." American Int'l Vacations v. McBride, 99 Nev. 324, 326, 661 P.2d 1301, 1302 (1983) (citations omitted); *see also* NRS 233B.135(3)(a).

This is a matter of first impression for this court. Chapter 616 of Nevada Revised Statutes does not address the issue of whether disability benefits may be suspended when a claimant is incarcerated. Nevada statutes provide only one specific condition whereby *temporary* total disability benefits may be suspended by SIIS: where a claimant voluntarily refuses to receive, or obstructs the completion of, a required examination. NRS 616.535(4).[2] And the only circumstances provided by Nevada law allowing for the *permanent* discontinuance of disability benefits is "when any physician or chiropractor determines that the employee is capable of any gainful employment." NRS 616.585(4)[3]; *see also* Chappaz

---

[2]NRS 616.535 provides in pertinent part:

    1. Any employee who is entitled to receive compensation under this chapter shall, if:

    (a) Requested by the insurer; or

    (b) Ordered by an appeals officer or a hearing officer,

submit himself for medical examination at a time and from time to time at a place reasonably convenient for the employee, and as may be provided by the regulations of the department.

    . . .

    4. *If the employee refuses to submit to any such examination or obstructs it, his right to compensation is suspended until the examination has taken place, and no compensation is payable during or for the period of suspension.*

(Emphasis added.)

[3]NRS 616.585(4) provides:

    4. For purposes of the payment of benefits for a temporary total disability under this section, *the period of temporary total disability ceases when any physician or chiropractor determines that the employee is capable of any gainful employment.*

(Emphasis added.)

v. Golden Nugget, 107 Nev. 938, 822 P.2d 1114 (1991). The appeals officer concluded that Campbell had neither obstructed nor refused to submit to a CIW, and that no physician had discharged Campbell "to return to gainful employment."

SIIS suggests that the term "obstruct," as used in NRS 616.535(4), means *any* voluntary act which results in a claimant failing to submit to a required examination. However, we interpret "obstruct" as meaning a volitional act *with intent* to hinder a required examination. Such an interpretation is in harmony with our policy of construing workers' compensation statutes liberally for the protection of the worker. Ransier v. SIIS, 104 Nev. 742, 746, 766 P.2d 274, 276 (1988) (citing Dep't Ind. Relations v. Circus Circus, 101 Nev. 405, 411-12, 705 P.2d 645, 649 (1985)).

The general rule of liberal construction of the workers' compensation statutes does not justify the *inclusion* or the *exclusion* "of a substantive right that cannot be supported by any fair reading of the statutory scheme." Weaver v. SIIS, 104 Nev. 305, 306, 756 P.2d 1195, 1196 (1988). We have consistently held that "where a policy consideration advocates *exclusion* of coverage, the legislature is perfectly capable of implementing such policy." Goldstine v. Jensen Pre-Cast, 102 Nev. 630, 631, 729 P.2d 1355, 1356 (1986) (emphasis added) (citing SIIS v. Conner, 102 Nev. 335, 721 P.2d 384 (1986)). "The purpose of the [workers' compensation] system is to provide compensation for industrial injuries." *Id.* at 631, 729 P.2d at 1356 (citing Breen v. Caesars Palace, 102 Nev. 79, 715 P.2d 1070 (1986)).

SIIS further argues that the phrase "capable of any gainful employment" in NRS 616.585(4) clearly implies a legislative intent to grant benefits for the replacement of lost wages. As a prisoner, Campbell's daily necessities were provided for by the State at no cost to him. Consequently, SIIS maintains that since Campbell could not enter the work force while incarcerated he did not lose any wages. While we are sympathetic to this argument, the simple fact is that Chapter 616 of the Nevada Revised Statutes does not provide for the withholding of disability benefits while a claimant is incarcerated, and we will not attempt to create such a disability.[4]

---

[4]SIIS maintains that its position is supported, by analogy, by the July 3, 1990 amendment to the Nevada Administrative Code entitled "Modified Program For Offenders In Prison Industry Program." NAC 616.722 provides:

> 1. *An offender is not entitled to accrue or be paid any compensation*

The dissent relies solely on Hansen v. Harrah's, 100 Nev. 60, 675 P.2d 394 (1984), for the proposition that public policy dictates an outcome in favor of SIIS. The circumstances herein, however, are clearly distinguishable from *Harrah's*. In *Harrah's*, we adopted a remedy for employees discharged in retaliation for filing workers' compensation claims. *Harrah's* did not, as the dissent is well aware, involve the exclusion of workers' compensation benefits. Our decision in favor of the employees in *Harrah's* was in accord with our "long-standing policy . . . to liberally construe [Nevada's workers' compensation laws] to protect injured workers and their families." *Id.* at 63, 675 P.2d at 396. We are not persuaded by the dissent to depart from that policy today.

The rule of exclusion proposed herein by SIIS, so zealously and religiously embraced by the dissent, is simply "not properly adopted by the courts." *Goldstine*, 102 Nev. at 632, 729 P.2d at 1357 (1986) (footnote omitted). A clear majority of other jurisdictions considering this identical issue agree. *See* Matter of Injury to Spera, 713 P.2d 1155 (Wyo. 1986) (emphasis added); United Riggers Erectors v. Industrial Com'n, 640 P.2d 189, 191 (Ariz.Ct.App. 1981); Crawford v. Midwest Steel Company, 517 So.2d 918, 923-924 (La.Ct.App. 1987); DeMars v. Roadway Express, 298 N.W.2d 645 (Mich.Ct.App. 1980). While we are sympathetic to the dissenter's view and applaud his enthusiasm, we, as judges, are constrained to follow the law.

---

*for temporary total disability, temporary partial disability, permanent partial disability or permanent total disability while he is incarcerated.*
   2.  Payment of compensation begins upon the release of the offender from incarceration on:
   (a) Parole;
   (b) Final discharge; or
   (c) Discharge from custody by order of a court of competent jurisdiction.
   3.  *Compensation will be discontinued during any subsequent period of incarceration in:*
   (a) A facility of the department of prisons; or
   (b) Any other federal, state or local prison system.
(Emphasis added.) While the above language is persuasive at first blush, the scope of this section is limited to those "injured or killed in the course and scope of . . . employment in the prison industry program. . . . The program *does not include coverage for an injury which occurred before the offender was confined* at a facility operated by the department of prisons." NAC 616.710 (emphasis added). Therefore, this section *specifically excludes* those in Campbell's position.
   While we applaud JUSTICE STEFFEN's stirring dissent, we must remain true to the sanctity of our oath of office and the doctrine of the separation of powers upon which this Great Republic is founded. The Nevada Legislature will convene in a few days. The Legislature will, in its infinite wisdom, take appropriate action to alleviate the fears which today torture the heart and mind of BROTHER STEFFEN.

The dissent's insinuation that this court is somehow responsible for the "financial trials" of "our state and our nation" is bewildering and alarmingly nonsensical. While we share the dissent's concern over the state treasury, it is clearly not within our province to remedy the state's fiscal problems as the dissent absurdly implies. For example, how long must a recipient of workers' compensation benefits be incarcerated before benefits may be denied? One year? One month? One week? Twenty-four hours? The dissent offers nothing but useless and unsupported rhetoric, which only reinforces our view that this issue is clearly one for the legislature to resolve. Since we share the dissent's opposition "to judicial intrusion on the realm of the legislative branch of government," we must affirm the decision in favor of Campbell's receipt of the suspended benefits.

Mowbray, C. J.

SPRINGER, J., concurring:

I have heretofore filed an order, ordering that the clerk strike my name from the majority opinion filed in this case because CHIEF JUSTICE MOWBRAY altered the original without my knowledge and inserted offensive material critical of JUSTICE THOMAS STEFFEN with which I strongly disagree. I agree with the decision of the majority of JUSTICES MOWBRAY, ROSE and YOUNG; hence, I concur in the result of that opinion only and not with the opinion itself.

ROSE, J., concurring, with whom YOUNG, J. agrees:

I have filed an order directing the clerk of this court to strike my name from the majority opinion filed in this case because CHIEF JUSTICE MOWBRAY altered the original without my knowledge and inserted offensive material critical of JUSTICE STEFFEN with which I strongly disagree. JUSTICE MOWBRAY's actions did not come to my attention until January 4, 1993, the day following the end of JUSTICE MOWBRAY's tenure on this court. I agree with the decision reached in the per curiam opinion, now bearing only the signature of CHIEF JUSTICE MOWBRAY; and, therefore, concur in the result of that opinion only and not with the opinion itself.

STEFFEN, J., dissenting:

I dissent.

In Hansen v. Harrah's, 100 Nev. 60, 675 P.2d 395 (1984), we properly filled a legislative void and provided public policy relief for an injured workman who was terminated in retaliation for filing a workmen's compensation claim. In Goldstine v. Jensen Pre-Cast, 102 Nev. 630, 729 P.2d 1355 (1986), we improperly (I

suggested in dissent) allowed a worker to recover compensation, notwithstanding his fraud on the employer, because the legislature had not provided for such a contingency. Today we conclude that an incarcerated felon may collect workmen's compensation insurance because the legislature failed to deny coverage to such persons.

I am strongly opposed to judicial intrusion on the realm of the legislative branch of government. And yet, many times the courts are called upon to apply a rule of reason to legislative voids or lacunae in order to facilitate the purpose and intent of a statute.

I am awed at the ability of this court to find a public policy basis for granting relief to an injured workman who is fired in retaliation for filing a workmen's compensation claim (as we did in *Harrah's*) and to find no public policy basis for refusing a double recovery of scarce public resources to an incarcerated felon. It is little wonder that our state and nation are experiencing such financial trials.

I have no difficulty discerning a public policy as strongly against the result reached by the majority today as the public policy we so readily discerned in favor of the injured workman who suffered retaliatory discharge in *Harrah's*.

Although I dissented in *Goldstine* because of the strong legal principle against rewarding persons for their own wrongdoing, at least in *Goldstine* we had an injured workman who was presumably in need of his daily subsistence. Here we have a claimant who, as a result of his own criminal conduct, received a prison sentence which, of necessity, required the furnishing of his daily food, clothing and lodging at taxpayers' expense. The majority contends in effect that because the legislature did not deny incarcerated persons workmen's compensation benefits during their periods of confinement, we must assume the dubious proposition that the legislature intended that such persons receive what is tantamount to a double recovery.[1] I am unable to endorse such a rule of profligacy.

I find equally unacceptable the majority's affirmation of the appeals officer's position that because Campbell was incarcerated, he "neither obstructed nor refused to submit to a CIW [comprehensive integrated work-up]."[2] Who must we presume obstructed Campbell's submission to the required comprehensive

---

[1]There is no contention that Campbell needed his disability benefits in order to care for dependents. Presumably, if Campbell had family dependent upon him during his incarceration, welfare assistance would have been available to assist with their needs.

[2]*See* NRS 616.535 as set forth and highlighted in majority opinion, footnote 2.

integrated work-up—the criminal justice system, the prison officials, or perhaps the inanimate facilities that restrained his ability to travel? I suggest that when Campbell used his free agency to commit a crime against society, thus subjecting himself to a potential loss of his personal freedom, he and he alone frustrated the performance of the CIW, thus suspending his right to compensation. Unfortunately, the appeals officer and this court's majority impliedly conclude that someone, something, or some force other than Campbell obstructed performance of the CIW.

SIIS reasonably and understandably insists that the statutory phrase "capable of gainful employment"[3] "clearly implies a legislative intent to grant benefits for the replacement of lost wages." SIIS thus concludes that since the prison system provided Campbell's daily bread and lodging, and since Campbell was not available for entry into the work force, he did not lose any wages.

Disregarding the System's reasoning, the majority simply concludes that it prefers to "leave such decisions to the discretion of the legislature." I have little hesitation in agreeing with SIIS. Campbell, by his own deliberate act, removed himself from the work force, and should not be rewarded at the expense of the solvency of the System during his period of incarceration.[4]

For the reasons specified above, I respectfully dissent.

---

[3]*See* majority opinion, footnote 3.

[4]I must assume under the majority's reasoning, that if Campbell had committed a crime resulting in a life sentence, he would have received compensation from the System indefinitely.