VIRGIL D. DUTT, Appellant/Cross-Respondent, v. RICHARD E. KREMP, M.D.; RAYMOND L. SWARTS, M.D.; PAUL S. CLARK, M.D.; and DAVID C. JOHNSON, M.D., Respondents/Cross-Appellants.

No. 22329

April 6, 1993                           848 P.2d 1073

*Wait & Shaffer,* Reno; *Lillick & Charles* and *Tristam B. Brown* and *James J. Corbelli,* San Francisco, for Appellant/Cross-Respondent.

*Carl M. Hebert,* Reno, for Respondents/Cross-Appellants.

## OPINION

*Per Curiam:*

On December 22, 1992, this court issued an opinion in the above-entitled matter, reversing the judgment of the district court and remanding for further proceedings. Dutt v. Kremp, 108 Nev. 1076, 844 P.2d 786 (1992). Respondents have now petitioned this court for rehearing. Additionally, the Nevada State Medical Association (NSMA) has moved this court for leave to participate on rehearing as amicus curiae.

Having carefully reviewed the petition and motions pending in this matter, we have determined that rehearing is warranted and that the participation of the NSMA as amicus curiae will assist in this court's deliberations. Accordingly, we grant rehearing.

Further, we grant the NSMA's pending motion to participate on rehearing as amicus curiae.[1] The NSMA shall have twenty (20) days from the date of this opinion within which to file an amicus brief. Appellant shall have thirty (30) days thereafter within which to file a reply brief addressing the arguments in the amicus brief. No further briefing shall be permitted. The clerk of this court shall schedule this matter for reargument. Oral argument shall be limited to thirty (30) minutes. The NSMA shall not be permitted to participate at the oral argument.

---

[1]We deny as moot the NSMA's request for leave to file a reply to appellant's opposition to the NSMA's motion for leave to file a brief as amicus curiae.

Finally, we deem it necessary to withdraw the opinion previously issued in this matter.[2]

SPRINGER, J., concurring:

I do not think that the majority opinion withdrawing the previously-issued opinion in this case adequately explains the absolute necessity for our cancellation and withdrawal of the former opinion issued in this case. We must now start over and hear and decide this case anew. The problem with the previously-issued and now withdrawn opinion is that at the time the opinion was issued on December 22, 1992, then CHIEF JUSTICE MOWBRAY presented to JUSTICES ROSE, STEFFEN, YOUNG and SPRINGER, at an official court conference, an original document entitled "Opinion" which differed in material ways from the copy of the draft opinion in the above case which he, JUSTICE MOWBRAY, circulated among the other justices as representing a true copy of the original "Opinion," which he proffered to the other justices for their signature. This misrepresentation on the part of JUSTICE MOWBRAY caused all of the remaining justices to sign a false document, one that did not represent their opinion in the above-entitled appeal. So that the reader of this opinion will be able to understand fully the normal procedures of this court and the magnitude of the impropriety engaged in by JUSTICE MOWBRAY, I have appended to this concurring opinion a copy of an affidavit filed by the Clerk of the Court in this matter. The Court Clerk's affidavit shows rather clearly and poignantly why it is unavoidable that the members of this court should have to withdraw the mistakenly-signed original opinion misleadingly presented by JUSTICE MOWBRAY for the other justices' signature.

## AFFIDAVIT OF JANETTE M. BLOOM

STATE OF NEVADA
}
ss.
CARSON CITY

Janette M. Bloom, being first duly sworn, deposes and says as follows:

1. I have been requested by Justice Charles E. Springer to prepare an affidavit describing the manner in which the five justices of the Supreme Court of Nevada consider and sign opinions and orders at their periodic conferences. I have been further requested to describe the procedures which I witnessed

---

[2]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this petition for rehearing, but will participate in the resolution of this matter on rehearing.

relative to two particular cases in which opinions were issued at the conference held on December 22, 1992. The subject cases are: Dutt v. Kremp, 108 Nev. 1076, 844 P.2d 786, referred to as *"Dutt,"* and SIIS v. Campbell, 108 Nev. 1100, 844 P.2d 795, referred to as *"SIIS."*

2. I have been the Clerk of the Supreme Court of Nevada since November of 1988, and during this time I have, at the request of the court, attended the conferences in which the justices discuss the business of the court and issue their varying opinions and orders. These conferences are known as "draft conferences." As part of my duties in connection with draft conferences, I prepare and distribute the agenda, take notes on the action taken respecting a particular case or item of business, and keep confidential records of the draft conferences.

3. At all times since I have been in attendance at draft conferences, the procedure for signing and issuing Supreme Court opinions and other dispositions has been and still is as follows:

(a) When an opinion is proposed by one of the justices for the signatures of the other justices and issuance by the court, that justice will circulate a copy of the proposed draft opinion among the other four justices, to the legal staff and to me. In that way, all justices, the legal staff, and I will know the content of the proposed draft opinions before the draft conference, and the justices will be able to make comments and decisions concerning the draft at the draft conference. The circulated copy of the draft opinion forms the basis for all discussions at the draft conference.

(b) When a change is made to a proposed draft opinion or other disposition subsequent to its circulation, the justice proposing the draft disposition will circulate a proposed "redraft" which notes the changes made to the original draft. Changes in the original draft are brought to the attention of the reader either by way of a memorandum explaining the change or by highlighting the change in the disposition. If time does not allow for the circulation of a redraft, changes to the draft opinion or other disposition are discussed and agreed upon by the justices during the draft conference. The final opinion or other disposition which the justices sign is to conform to the circulated copy or to the discussions held at the draft conference. At times, changes in drafts resulting from correction of minor grammatical or typographical errors are not circulated or discussed. Substantive changes in drafts, however, are always to be circulated or discussed at conference with the other justices.

(c) The justice proposing the draft opinion or other draft is responsible for ensuring that the original draft to be signed by the justices conforms to the circulated copy, and the justice also

retains custody of the original opinion until it is signed at the draft conference.

(d) After all of the justices have read the copies of the proposed opinions or other dispositions, those cases are placed on a draft conference agenda; and if a disposition represented by the circulated copy is acceptable to the justices, they will sign the original based upon their having read and studied the copy of the opinion that had been circulated. The signed original opinion or other disposition is then lodged with the clerk's office for filing and public dissemination.

(e) None of the justices has the occasion or need to read the original form of the circulated opinion at the draft conference because each justice, presumably, has a true copy of the proposed disposition. Additionally, time constraints imposed by the court's case load prohibit the justices from re-reading at the draft conference the original of a disposition which they have previously reviewed. In sum, the justices study the copy of the opinion or other disposition sent to them, and sign the original based on the implicit understanding and representation that the copy is the same as the original being presented for signature and filing.

(f) The procedure described above is followed for unanimous, majority, dissenting, and concurring opinions, and for all other dispositions as well.

4.  Having explained the procedures employed by the court, I go on to relate the events pertaining to the signing of the opinion in Dutt v. Kremp, Docket No. 22329, on December 22, 1992.

(a) The records in my office show that on July 31, 1992, Chief Justice Mowbray circulated a draft per curiam opinion in the *Dutt* case. On August 3, 1992, Chief Justice John C. Mowbray circulated a memorandum noting that changes had been made to pages 4 and 8 of the draft opinion together with copies of the changed pages. At the draft conference held following the circulation of the mentioned draft, Justice Thomas Steffen advised that he did not agree with Chief Justice Mowbray's draft and that he would be filing a dissenting opinion. Justice Steffen circulated a copy of his proposed dissent on September 22, 1992. Justice Robert Rose later indicated that he would join in Justice Steffen's dissent. No other draft or redraft opinions were circulated in the *Dutt* case.

(b) Subsequent to the circulation of Justice Steffen's dissent, *Dutt* was placed on the draft conference agenda for discussion at the conferences held December 3 and December 11, 1992. At both of these conferences, the matter was passed for Chief Justice Mowbray to review Justice Steffen's dissent.

(c) Chief Justice Mowbray requested that all matters assigned to him be placed on the agenda for the December 22, 1992, draft

conference so that the cases could be decided before he retired at the end of the year. I therefore placed the *Dutt* case on the draft conference agenda for decision and issuance of an opinion in which Justices Mowbray, Springer and Young were in the majority and Justices Steffen and Rose were dissenting. At the December 22, 1992, draft conference, Chief Justice Mowbray presented an original opinion for his signature and the signatures of Justices Young and Springer. Justice Steffen presented an original dissent for his signature and the signature of Justice Rose. I have reviewed the original majority and dissenting opinions signed and filed on December 22, 1992. Apart from the addition of Justice Rose's name, the original dissent signed by Justices Steffen and Rose is the same as the copy circulated by Justice Steffen on September 22, 1992. The original opinion presented by Chief Justice Mowbray, however, is substantially different from the copy that he had circulated among the other justices, the staff, and me. At no time did Chief Justice Mowbray advise me, the staff or the other justices that he had altered the original opinion so that it was no longer the same document as the copy that he had circulated as of July 31, 1992, with corrections as circulated on August 3, 1992.

(d) Without advising the other justices, the staff, or me, Chief Justice Mowbray had reformatted the opinion from a per curiam to an authored decision where he appears as the opinion's author, and inserted additional paragraphs in the original opinion that did not appear in the copy that he had presented as a true copy of the opinion which he offered for signature. Specifically, the copy circulated by Chief Justice Mowbray did not include the following language which appears in the opinion signed and filed on December 22, 1992:

> "The dissenting author's advocacy on behalf of the medical establishment, while characteristically turgid, is laudable, as are his past efforts on behalf of gaming concerns, business and industry, and assorted insurance companies. One is nigh moved to tears by these chronicles of destitution, misery and exploitation of the privileged few by the wicked little people.
>
> "Mr. Justice Steffen, the world is not as you see it. I remind you that all persons—not just society's "winners"— are equal before the judicial courts of this land. I also urge you to open your eyes to the practical consequences of your rarified legal analysis; People suffer unjustly when they are fired from their jobs for little or no reason or when they are denied insurance coverage based on an arcane reading of some hidden policy exclusion. With respect to the rule you

advocate today, it would undoubtedly discourage ordinary citizens from bringing a civil wrong to a court's attention or, for that matter, reporting criminal conduct. Finally, I suggest to you that the judicial task requires far more than sterile analytic skill; one needs compassion, humility, grace and, at times, mercy and the ability to forgive. In short, the judicial craft, as well as the law itself, demands a heart.''

5. The events relating to the signing of the opinion in SIIS v. Campbell, Docket No. 22409, on December 22, 1992, are as follows:

(a) The records in my office show that on January 22, 1992, Chief Justice Mowbray circulated a draft per curiam opinion in the *SIIS* case. At the draft conference held following the circulation of the mentioned draft, Justice Steffen advised that he did not agree with Justice Mowbray's draft and that he would be filing a dissenting opinion. Justice Steffen circulated a copy of his proposed dissent on July 14, 1992. Chief Justice Mowbray circulated a redraft per curiam opinion on August 25, 1992, and he circulated a second redraft per curiam opinion on September 4, 1992. No other draft or redraft opinions were circulated in the *SIIS* case.

(b) Subsequent to the circulation of Justice Steffen's dissent, *SIIS* was placed on the draft conference agenda for discussion at the conferences held July 21, August 5, August 20, September 3, October 22, December 3 and December 11, 1992. At each of these seven conferences, the matter was passed for Chief Justice Mowbray to review Justice Steffen's dissent. Chief Justice Mowbray also indicated that, in light of Justice Steffen's dissent, he might change the draft majority opinion.

(c) Chief Justice Mowbray requested that all matters assigned to him be placed on the agenda for the December 22, 1992, draft conference so that the cases could be decided before he retired at the end of the year. I therefore placed the *SIIS* case on the draft conference agenda for decision and issuance of an opinion in which Justices Mowbray, Springer, Rose and Young were in the majority and Justice Steffen was dissenting. At the December 22, 1992, draft conference, Chief Justice Mowbray presented an original opinion for his signature and the signatures of Justices Springer, Rose and Young. Justice Steffen presented an original dissent for his own signature. I have reviewed the original majority and dissenting opinions signed and filed on December 22, 1992. Other than two minor editorial changes, the original dissent by Justice Steffen is the same as the copy circulated by Justice Steffen on July 14, 1992. The original opinion presented by Chief Justice Mowbray, however, is substantially different

from the copy that he had circulated among the other justices, the staff, and me. At no time did Chief Justice Mowbray advise me, the staff or the other justices that he had altered the original opinion so that it was no longer the same document as the copy that he had circulated as of January 22, 1992, with changes as circulated on August 25, 1992, and September 4, 1992.

(d) Without advising the other justices, the staff, or me, Chief Justice Mowbray had inserted an additional footnote in the original opinion that did not appear in the copy that he had presented as the opinion which he offered for signature. Specifically, the copy circulated by Chief Justice Mowbray did not include the following language which appears in the opinion signed and filed on December 22, 1992:

> "While we applaud Justice Steffen's stirring dissent, we must remain true to the sanctity of our oath of office and the doctrine of the separation of powers upon which this Great Republic is founded. The Nevada Legislature will convene in a few days. The Legislature will, in its infinite wisdom, take appropriate action to alleviate the fears which today torture the heart and mind of Brother Steffen."

6. To my knowledge, in the four years that I have been clerk, no majority opinion other than those issued in *Dutt* and *Campbell* has been substantially altered by a justice without the justice having circulated a copy of the revised opinion to the other justices for their review or otherwise informing the other justices that changes were made to the opinion. A justice did, however, substantially alter a dissenting opinion without circulating a copy of the revised opinion to the other justices or otherwise informing the other justices of the changes. In the case of Lickey v. State, 108 Nev. 191, 827 P.2d 824 (1992), the opinion issued by the court included a dissenting opinion by Chief Justice Mowbray. I have reviewed the original majority and opinions signed and filed on March 5, 1992, and the proposed draft opinions circulated prior to the issuance of the court's opinion in the *Lickey* case. The original dissenting opinion filed in *Lickey* differs substantially from the copy circulated by Chief Justice Mowbray and discussed at the draft conference of March 5, 1992. While the justices were signing the *Lickey* decision, Justice Rose specifically asked Chief Justice Mowbray if he had made any changes to the dissenting opinion. Chief Justice Mowbray indicated to Justice Rose that none had been made. The dissenting opinion had, in fact, been substantially altered and amounted to virtually a complete redraft of the dissent. As a result of the undisclosed changes in Chief Justice Mowbray's dissenting opinion, the majority opinion con-

tained language responding to a statement which Chief Justice Mowbray had deleted from his dissent. In order for the signed and filed majority opinion to make sense, it was necessary to change the majority opinion after the filing of the opinion in the *Lickey* case.

7. To my knowledge, the instances described above respecting the *Dutt* and *Campbell* cases are the only times in which one of the justices presented a document for signature by the other justices that was not the same as the copy of the document that had been circulated to the other justices, to the court's legal staff, and to me, or in which the changes that a justice had made to a document were not discussed and reviewed by the other justices prior to the issuance of the disposition. To my knowledge, the instance described above respecting the *Lickey* case is the only time in which a justice presented a dissenting opinion for signature and filing that was not the same as the copy that had been circulated to the other justices, to the court's legal staff, and to me, and in which a justice affirmatively represented that a dissenting opinion had not been altered when, in fact, the justice had substantially altered the dissent.

DATED this 31st day of December, 1992.

Janette M. Bloom

Subscribed and sworn to before me this 31st day of December, 1992.

Linda A. Castillo
*Notary Public*