RENE CHAPPAZ, Appellant, *v.* GOLDEN NUGGET, Respondent.

No. 21904

December 20, 1991                    822 P.2d 1114

[Rehearing denied May 18, 1992]

*King, Clark, Gross & Sutcliffe,* Las Vegas, for Appellant.

*Jerry Collier Lane,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

On May 27, 1985, 53-year-old Rene Chappaz (Chappaz) was injured when he slipped on the floor in the kitchen of the Golden Nugget hotel (Nugget), where he worked as a cook. The first doctor to examine Chappaz determined that he had a cervical strain and should stay home from work for one week. Chappaz complained of persisting pain, however, and after seeing several other doctors, he ultimately came under the care of Dr. Gary Marrone.

On November 25, 1985, the Gibbens Company, representing the Nugget, a self-insured employer, sent Dr. Marrone a letter stating that Chappaz was six months post-injury and still disabled from work, and requesting that Dr. Marrone describe any objective medical findings which continued to disable Mr. Chappaz. The following day, Dr. Marrone issued Chappaz a "return to work" note.

Chappaz underwent several physical examinations and medical tests by other doctors, but the results indicated nothing abnormal. On February 10, 1987, Dr. George Schanz wrote a letter stating

that Chappaz was suffering from a degenerative cervical disc disease and that there may be some instability in the cervical spine. He recommended myelographic investigation. Dr. Schanz also stated that Chappaz had been disabled since May of 1985 and that he probably would not be able to return to work unless something further could be done. Chappaz then was referred to Dr. Richard Lewin, who described "nerve root compression in the neck" and agreed with Dr. Schanz' recommendation for myelographic studies. An MRI revealed a "bulging disc at C4-5 and compression at C-5." On August 3, 1987, Dr. Lewin submitted a report recommending an anterior cervical diskectomy and interbody fusion.

Chappaz requested retroactive temporary total disability (TDD) benefits, but the insurer advised him that his benefits would be reinstated only when he had "availed himself of medical treatment necessary to relieve his condition." An administrative hearing officer affirmed the insurer's denial of benefits, and the decision ultimately was affirmed by Appeals Officer Charles York on March 6, 1989.

Meanwhile, the insurer had referred the case to a Medical Review Board (Medical Board) comprised of surgeons, to determine the cause of the problem and the reasonableness of the recommended surgery. The Medical Board met on August 29, 1988, and in a report dated August 31, 1988, concluded that Chappaz' fall had caused the current disc or neurological problem for which surgery was recommended. The report further stated that surgery was a reasonable approach to Chappaz' pain and that a myelogram was recommended prior to any surgical exploration. Finally, the report stated that the purpose of the surgery was to relieve chronic pain and that there was a high probability of success.

On November 29, 1989, after a rehearing, Appeals Officer Michael Rowe ordered the Nugget to provide Chappaz with vocational rehabilitation maintenance benefits commencing July 8, 1988, the date of his request for benefits. It was brought to our attention at oral argument that during the period in question, Appeals Officer York was replaced by Appeals Officer Rowe. The appeal to Officer York involved the issue of whether Chappaz was able to return to work, as he had been issued a "return to work" note from Dr. Marrone. The appeal to Officer Rowe involved a later time period, after it became clear that Chappaz had declined the recommended surgery. Officer York's decision dealt with the period beginning with Chappaz' injury and ending with the surgery recommendation issued August 3, 1987. Pursuant to Officer Rowe's ruling, Chappaz was referred to a designated rating physician, who determined that Chappaz had a forty-six percent permanent partial disability.

Chappaz subsequently filed a petition for judicial review of the March 6, 1989 decision of Appeals Officer York. Soon after this petition was filed, the Nugget filed a petition for judicial review of the November 29, 1989 decision of Appeals Officer Rowe. Although the appeals officers' decisions discussed different benefits and different time periods, the facts and evidence presented to each were the same. Because the decisions conflict, they rendered confusing Chappaz' entitlement to benefits.

The district court rendered judgment on both petitions. First, the court affirmed Appeals Officer York's March 6, 1989, decision requiring surgery as a prerequisite to recovery of TTD benefits. Next, the court found that the November 29, 1989, decision of Appeals Officer Rowe misconstrued applicable law and thus was clearly erroneous. The court reversed the decision, concluding that: (1) Officer Rowe's finding that Chappaz had been unable to work at his pre-accident employment since the date of the injury constitutes an abuse of discretion in that it was not supported by the record on appeal; (2) Dr. Marrone had issued a full-duty return to work release, and no subsequent competent medical authority issued a disability slip thereafter; and (3) Rowe improperly based one of his findings on the report of an unauthorized physician who submitted a retroactive medical statement that Chappaz had been disabled since May of 1985.

We conclude that Officer Rowe's decision was based on substantial evidence in the record and that it was not affected by error of law. Moreover, because the appeals officers' decisions conflict, and Officer Rowe's decision addresses the issues more thoroughly and more recently, we are compelled to reverse the district court's approval of Officer York's decision.

## DISCUSSION

A court reviewing an administrative adjudicator's decision may not substitute its judgment for that of the adjudicator as to the weight to be given the evidence on questions of fact. Nevada Industrial Commission v. Hildebrand, 100 Nev. 47, 52, 675 P.2d 401, 404 (1984). The reviewing court should reverse an appeals officer's decision, however, where the decision has been affected by error of law. Warpinski v. SIIS, 103 Nev. 567, 570, 747 P.2d 227, 230 (1987).

*Chappaz' Refusal to Undergo the Recommended Surgery*

NRS 616.565 provides in pertinent part:

> 2. No compensation is payable for the death, disability or treatment of an employee if his death is caused by, or

insofar as his disability may be aggravated, caused or continued by, *an unreasonable refusal* or neglect to submit to or to follow any competent and *reasonable surgical treatment* or medical aid.

3. If any employee persists in insanitary or injurious practices which tend to either imperil or retard his recovery, or refuses to submit to such medical or surgical treatment as is reasonably essential to promote his recovery, his compensation may be reduced or suspended.

(Emphasis added.) The Medical Board determined that the surgical treatment recommended was a reasonable approach to Chappaz' problem. Therefore, the question presented is whether Chappaz' choice to decline the surgery was reasonable. Chappaz cites 1 Larson, The Law of Workmen's Compensation § 13.22(f) (1991), which states in pertinent part:

Reasonableness of refusal of surgery

If the risk is insubstantial and the probability of cure high, refusal will result in a termination of benefits. . . . But *if there is a real risk involved,* and particularly if there is a considerable chance that the operation will result in no improvement or even perhaps in a worsening of the condition, the claimant cannot be forced to run the risk at peril of losing his statutory compensation rights. In such cases, and *particularly in the commonest operations presenting this problem—hernia and intervertebral disc—most courts will not at present disturb a finding that refusal to submit to the operation is reasonable,* since the question is a complex fact judgment involving a multitude of variables, including claimant's age and physical condition, his previous surgical experience, the ratio of deaths from the operation, the percentage of cures, and many others.

(Footnotes omitted; emphasis added.) In determining that Chappaz' refusal to undergo the surgery was "not unreasonable," Appeals Officer Rowe specifically discussed the risks involved. Because Officer Rowe's decision addresses the facts and is based on substantial evidence and a correct interpretation of the law, we conclude that he did not err in ruling as he did.

### Chappaz' Entitlement to Retroactive Vocational Rehabilitation Maintenance Benefits

Chappaz contends that, regardless of his decision not to undergo surgery, he is entitled to TTD benefits because he has been disabled and unable to work since his accident. He asserts that he should receive TTD benefits until he either receives a full duty release or acquires skills which will enable him to return to

gainful employment within the limitations imposed by his accident. Finally, Chappaz argues that his ability to return to his pre-accident employment is a question of fact which properly was addressed by Officer Rowe.

Appeals Officer York found that Chappaz was "returned to work" by Dr. Marrone on March 5, 1986, and that no competent medical authority subsequently has found Chappaz to be unable to work. Appeals Officer Rowe, however, found that Chappaz has been disabled since May of 1985, and that he has been unable to work at his pre-accident employment since the date of the injury. The district court found that Officer Rowe incorrectly accepted as fact the retroactive application of Dr. Schanz' report.

NRS 616.222 provides that when an injured worker is unable to return to pre-accident employment, he is entitled to vocational rehabilitation until he can return to gainful employment consistent with the limitations imposed by his industrial accident. Competent medical authority must establish that because of the industrial related injury, the injured worker is physically unable to return to his pre-injury employment. *See* Diaz v. Golden Nugget, 103 Nev. 152, 734 P.2d 720 (1987); Nevada Industrial Comm. v. Taylor, 98 Nev. 131, 642 P.2d 598 (1982); NAC 616.076.

Dr. Schanz' report was dated January 23, 1987, before either appeals officer's decision was rendered. We are unable to determine why Officer York's decision does not discuss this report. As the Nugget offers no authority forbidding a hearing officer from relying on a retroactive medical report, we conclude that Officer Rowe did not err in considering Dr. Schanz' report in reaching his decision.

### Chappaz' Entitlement to The Permanent Partial Disability Evaluation

Chappaz argues that, for the following reasons, Appeals Officer Rowe correctly determined that Chappaz should be evaluated for permanent partial disability: (1) the risks of surgery compelled Chappaz to decline to undergo the only remaining therapeutic option; (2) no further medical treatment was offered, and (3) his condition was stationary and stable.

NRS 616.605 states in part:

> 1. Every employee, . . . who is injured by an accident arising out of and in the course of employment is entitled to receive the compensation provided for permanent partial disability.

2. The insurer shall select a physician from a group of rating physicians designated by the administrator, to determine the percentage of disability in accordance with the American Medical Association's Guides to the Evaluation of Permanent Impairment . . . .

Because Chappaz reasonably refused to undergo the surgery, he is entitled to permanent, partial disability benefits and thus properly received the evaluation.

## CONCLUSION

We hereby reverse the district court's decision and hold that Appeals Officer Rowe's decision of November 29, 1989, be reinstated.