No. 89,360

Columbus W. Neal, *Claimant/Appellee*, v. Hy-Vee, Inc., *Respondent/Appellant*, and Hawkeye Security Insurance Company, *Insurance Carrier/Appellant*.

(81 P.3d 425)

2

Opinion filed December 24, 2003.

*Mark E. Kolich,* of Mustain, Higgins, Kolich, Lysaught & Tomasic, Chartered, of Kansas City, argued the cause and was on the brief for appellants.

*James E. Martin,* of Law Offices of James E. Martin, of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The Workers Compensation Board (Board) affirmed the decision of the administrative law judge (ALJ) awarding workers compensation benefits to employee Columbus Neal. Employer Hy-Vee, Inc., and its insurer Hawkeye Security Insurance Com-

pany appealed from that part of the decision not suspending the employee's right to payment of compensation under K.S.A. 44-518. The employee was serving time on felony convictions and was unable to attend the employer's scheduled medical exam in the office of the employer's chosen physician. The employer also claims that the Board did not have the authority to remand the case to the ALJ for a determination of the employee's average weekly wage. We affirm.

FACTS:

On November 2, 1996, the employee sustained a compensable back injury while working for the employer in Johnson County. During the course of his medical treatment for this injury, the employee was arrested on a murder charge and another felony charge and held in the Jackson County, Missouri, jail in June 1997. At the request of the employee's counsel, Dr. David Zimmerman examined the employee in the jail on June 12, 1998. Dr. Zimmerman opined that the employee had an 8% impairment to the whole person as a result of his compensable injury.

The employee was convicted of murder and armed criminal action and sentenced to serve two life sentences. He continued to receive medical treatment through the Jackson County jail and Truman Medical Center until he was transferred to the Crossroads Correctional Center in Cameron, Missouri, in September 1998. Cameron is 52 miles from the metropolitan Kansas City area. The employee's incarceration prevented him from attending the scheduled medical examination in the office of the employer's physician, Dr. Michael Poppa, in Kansas City, Missouri, on December 29, 1998.

On December 30, 1998, the employer moved to suspend the proceedings under K.S.A. 44-518 until the employee was able to make himself available for an examination under K.S.A. 44-515. The ALJ suggested that the employer arrange for the examination to take place at the Crossroads facility, either by Dr. Poppa or a local physician serving the facility. The employer informed the ALJ that Dr. Poppa's schedule did not permit him to perform an ex-

amination of the employee in the prison and that it was unfamiliar with the qualifications or reputations of the local physicians.

At the regular hearing, the ALJ indicated that no agreement had been reached regarding the employee's average weekly wage, although it was alleged that his wages were $11.30 per hour plus overtime, or $440. Additionally, evidence was introduced indicating that the employee had received 3 months' temporary total disability (TTD) in the amount of $983.12. In the October 27, 1999, award, the ALJ found that the employee suffered a compensable injury which resulted in a permanent partial functional impairment of 8% and was entitled to future medical treatment. The ALJ also found the employer's admission that the employee was paid 3 weeks of TTD totaling $983.12, suggesting an average weekly benefit paid of $327.71, slightly exceeding the $326 maximum at the time, and indicating an average weekly wage of $451.57, matched the employee's assertion at the prehearing settlement conference. See K.S.A. 44-510c(b)(1). The employee was awarded 3 weeks of TTD at the rate of $326 per week totaling $978 followed by 33.20 weeks at $326 for an 8% permanent partial general body disability, making a total award of $11,801.20 due and owing to the employee on December 29, 1998. The award was payable until December 29, 1998, after which it was suspended until an examination scheduled by the employer at a Missouri location was attended by the employee.

The employer appealed, raising two issues before the Board. First, the employer argued that the employee's benefits should have been suspended because he was incarcerated at a prison facility in Cameron and failed to attend a medical appointment scheduled by the employer. Second, the employer argues that the employee's benefits should have been denied because the employee did not present any evidence regarding his average weekly wage, an essential element of his claim.

In the April 19, 2000, order, the Board found the employee's failure to appear at the scheduled appointment for examination by the employer's doctor did not operate to suspend his right to benefits under K.S.A. 44-515 and K.S.A. 44-518. The Board concluded that under the circumstances, the employee did not refuse to sub-

mit to an examination as that term is used in K.S.A. 44-518. The Board reasoned that the term "refusal" carries with it an element of willfulness or intent, that the employee could not go to the examination, and that it was unwilling to have the prior criminal act substitute as the act of refusing to attend the examination. The Board also concluded that a reasonable time and place for such an examination would have been the correctional facility in Cameron.

The Board also found that the employee offered no evidence of his average weekly wage but the employer did not comply with K.A.R. 51-3-8(c) by providing payroll records. "[I]n the interest of justice," the Board remanded the case to allow the employee to introduce evidence of his average weekly wage. The employer attempted an appeal to the Kansas Court of Appeals. However, the employer's appeal was dismissed because the Board's April 19, 2000, order was interlocutory.

Consistent with the Board's order, the case was remanded to the ALJ. While continuing to contend that the Board had no authority to allow the employee a new opportunity to establish his average weekly wage after he had failed to establish the same in the first regular hearing before the ALJ, the employer stipulated that the employee's average weekly wage was $462.18.

In his May 15, 2001, award, the ALJ took into account the deposition of Kip Kubin, who discussed the difficulty in obtaining ·a qualified medical examination of the employee while he was imprisoned in Cameron and the estimates that the costs of well-known evaluators would be $3,000 to $5,000 for an examination. However, the ALJ pointed out that the employee was examined by Dr. Zimmerman while in the Jackson County jail and the employer had several years to likewise arrange an examination in Kansas City. The ALJ awarded the employee 3 weeks of TTD at the rate of $308.14 per week, followed by 33.20 weeks at $308.14 per week, for an 8% permanent partial general body disability. The ALJ reasoned that the benefits should be suspended as of December 29, 1998, the date the employee failed to appear for the examination.

The employer appealed to the Board, arguing that the employee's benefits should have been suspended because his incarceration prevented an examination by its chosen physician and the

Board did not have the authority to remand the case for more specific evidence of the average weekly wage.

The Board affirmed the ALJ in its July 29, 2002, order. Regarding the suspension issue, the Board noted testimony that the usual and customary fee for an independent medical examination is between $350 and $800. The Board recognized that Delaware and Nevada courts have held the failure of an incarcerated employee to appear for medical examination should not be treated as a refusal but a Pennsylvania court had held that an employee had no right to force the employer to make special arrangements to accommodate incarceration. The Board concluded:

"The Board concludes that under the circumstances of this case, claimant did not refuse to submit to an examination. In addition, in this case a reasonable time and place would have been the correctional facility in Cameron, Missouri. The terms 'refusal' and 'unnecessarily obstructs' carry with them an element of willfulness or intent. Claimant did not decide not to go to the examination, he could not go. The Board is unwilling to treat incarceration for the prior criminal act as a substitute for the act of refusing to attend the examination.

"Under the circumstances, the prison facility in Cameron, Missouri, would have been the reasonable place for the examination. The record indicates respondent initially asked one physician to go to the facility. When he refused, respondent made no further effort to arrange for an examination. Upon remand of the matter, the respondent contacted two physicians and one refused to go to the facility and the other was not able to schedule such an all day appointment for two months. The fee for such examination would be $3,000.

"The Board concludes the respondent has not established it is unreasonable to arrange for an examination of claimant at the prison facility. The respondent did not attempt to locate qualified physicians closer to the prison facility in Missouri to conduct an examination of the claimant. Such local physicians would certainly not require the entire day that the two physicians respondent contacted required. In addition, competent medical testimony can be established by a physician without examining the claimant. A physician can review the claimant's medical records and under the Fourth Edition of the AMA Guides offer an opinion on claimant's functional impairment, if any."

Regarding the wage issue, the Board found that K.S.A. 2002 Supp. 44-551(b)(1) grants the Board the authority to remand any matter to the ALJ for further proceedings and remand in this case was contemplated by statute. The Board concluded that the employee's allegations regarding his average weekly wage were unclear because $11.30 per hour plus overtime did not add up to

$440 and the statements by counsel regarding TTD benefits which had been paid were not stipulations as to the average weekly wage. Remand was required in the interests of justice and because of the employer's failure to comply with K.A.R. 51-3-8(c) by failing to provide a wage statement and payroll information or state its position on an average weekly wage.

Two Board members dissented from the majority opinion. The dissent found that under K.S.A. 44-518, the employer's statutory right to obtain and present rebuttal medical evidence from a physician of the employer's choice on the extent of the employee's impairment was unnecessarily obstructed. It found that the K.S.A. 44-515 requirement that the employee submit to a medical examination at a reasonable time and place does not include making special arrangements and paying increased fees to facilitate an examination if an employee is incarcerated and cannot submit to an examination at the doctor's facility.

The dissent found the employee's failure to attend the scheduled examination was without reasonable cause or excuse, that he was unable to comply with the examination because he was incarcerated, that the employee exercised his will to commit a crime and subject himself to a potential loss of his personal freedom, and that these were not circumstances beyond the employee's control. It concluded that the burden was on the employee to request a transfer to the location of the examination and until he could comply with K.S.A. 44-518 his case should be suspended.

The dissent also found that the employee's failure to subpoena or obtain an order for payroll records from the employer and to testify about his average weekly wage should have resulted in a denial of compensation for failure to meet the burden of proof on an essential element of the case. It opined that the majority erred by remanding the case for additional evidence on the disputed average weekly wage because remand should not be used to allow a party a second chance to present evidence on a disputed issue because it eliminates any semblance of an adversarial proceeding and removes the Board from making an impartial determination based on the facts before the ALJ.

The employer appeals the Board's July 29, 2002, order.

The employer advances on appeal the same two issues raised before the Board. First, the employer argues that the consequences of the employee's criminal convictions which precluded his compliance with K.S.A. 44-515(a) constitute a refusal to submit to a medical examination under K.S.A. 44-518, with the result that the employee's right to payment of compensation is suspended. Alternatively, the employer contends that the employee's intentional and willful acts have created his incarceration which, in turn, "unnecessarily obstructs" and "prevents" the examination. The employer argues the Board improperly expanded its jurisdiction by finding the term "unnecessarily obstructs" carries with it an element of willfulness of intent. Second, the employer argues that the Board erred by granting the employee another opportunity to establish through remand an essential element of his claim—his average weekly wage.

(1) The Effect of the Employee's Failure to Appear For the Employer's Scheduled Medical Examination by Reason of the Employee's Incarceration on Unrelated Felony Conviction Under K.S.A. 44-515 and K.S.A. 44-518

The employer argues that the Board improperly expanded its jurisdiction by finding the terms "refusal" and "unnecessarily obstructs or prevents" carries with it an element of willfulness or intent on the part of the employee. The employer contends that the Board erred in its conclusion that the employee's failure to appear at the appointment scheduled with Dr. Poppa did not operate to suspend the employee's right to benefits.

The employee counters that the employer's argument ignores the reasonableness requirements of the examination under K.S.A. 44-515 and K.S.A. 44-518. He argues that the employer has failed to demonstrate that it made a reasonable attempt to get the employee examined, that it was unreasonable to expect the employee to be examined in Kansas City while he was incarcerated in Cameron, and that the Board properly interpreted the terms refusal and unnecessarily obstructs to carry with them an element of willfulness or intent.

K.S.A. 44-515(a) provides in relevant part:

"After an employee sustains an injury, the employee shall, upon request of the employer, submit to an examination at any reasonable time and place by any one or more reputable health care providers, selected by the employer, and shall so submit to an examination thereafter at intervals during the pendency of such employee's claim for compensation, upon the request of the employer, but the employee shall not be required to submit to an examination oftener than twice in any one month, unless required to do so in accordance with such orders as may be made by the director."

K.S.A. 44-518 provides:

"If the employee refuses to submit to an examination upon request of the employer as provided for in K.S.A. 44-515 and amendments thereto or if the employee or the employee's health care provider unnecessarily obstructs or prevents such examination by the health care provider of the employer, the employee's right to payment of compensation shall be suspended until the employee submits to an examination and until such examination is completed. No compensation shall be payable under the workers compensation act during the period of suspension. If the employee refuses to submit to an examination while any proceedings are pending for the purpose of determining the amount of compensation due, such proceedings shall be dismissed upon showing being made of the refusal of the employee to submit to an examination."

Although the Kansas courts have never considered the reasonableness of scheduling an examination for an incarcerated employee, or whether incarceration itself constitutes a refusal to submit to the examination, the interpretation of K.S.A. 44-515 and 44-518 in another situation is helpful to this analysis.

In *Zimmerman v. O'Neill Tank Co.*, 188 Kan. 306, 362 P.2d 10 (1961), the Supreme Court found that an employer's request that the employee submit himself for further examination 18 days after the date on which the commissioner was required to file the award was unreasonable and improper and the employee's refusal to appear did not suspend his right to compensation. The court reasoned:

"[W]e have no difficulty in concluding that before the provisions of 44-515, *supra*, and for that matter its supplementing section (44-518, *supra*), become operative, the request of an employer for further examination of a workman must fix a reasonable time at which the workman shall appear for the examination. Moreover, we are convinced that the date fixed for the holding of an examination must be at a time when the examination itself would serve some useful purpose in effectuating the purposes of the proceeding then pending under the Act, other-

wise the time fixed for the holding of such examination is not to be construed as having been at a 'reasonable time,' within the meaning of those words as used in 44-515, *supra*. Indeed, such a conclusion is warranted under the clear and unequivocal language of 44-515, *supra*, providing for examination at any reasonable time, and the equally plain provisions of 44-518, *supra*, indicating that unless the employee refuses to submit himself for an examination provided for in section 15 (44-515), the penalties prescribed by 44-518 have no application." 188 Kan. at 310.

The Board concluded that the reasonable time and place for the examination was the correctional facility in Cameron rather than the doctor's office in Kansas City. This conclusion under K.S.A. 44-515 would result in a determination not to suspend the employee's benefits under K.S.A. 44-518 because the scheduled examination in Kansas City, according to the Board, was not a reasonable place for the examination. Such a determination by the Board could have ended the matter. However, the Board further concluded that the employee did not willfully or intentionally refuse or unnecessarily obstruct his attendance at the examination in Kansas City under K.S.A. 44-518.

There are two questions presented in regard to the issue we now consider. The first is a question of law regarding the interpretation of K.S.A. 44-518 and whether the provisions of the statute operate as a matter of law to suspend the employee's right to payment of compensation. In other words, does the employee's incarceration for felony convictions amount to a refusal, obstruction, or prevention of the scheduled examination as a matter of law? The second question addresses the reasonable time and place requirement under K.S.A. 44-515. This question is one of fact dependent upon the circumstances of the case being considered.

### K.S.A. 44-518—Question of Law

Does the employee's incarceration for felony convictions unrelated to the workers compensation proceedings constitute a refusal or unnecessary obstruction or prevention of such examination under K.S.A. 44-518 as a matter of law? The question posed is one of first impression in Kansas. The Board answered no to this question by concluding that the terms "refusal" and "unnecessarily obstructs" in K.S.A. 44-518 carry with them an element of willfulness

or intent. According to the Board, the employee did not decide not to go to the examination; rather, he could not go. The Board was unwilling to treat incarceration for his felony convictions as a substitute for the act of refusing to attend the examination.

Our standard of review is statutorily defined by the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* Under K.S.A. 77-621(c), this court may grant relief if it finds the agency has erroneously interpreted or applied the law. The interpretation of K.S.A. 44-515 and K.S.A. 44-518 is a question of law subject to unlimited review. Although deference must be given to the Board's interpretation of the law, this court may take corrective action if such interpretation is erroneous. *Burton v. Rockwell International,* 266 Kan. 1, 5, 967 P.2d 290 (1998).

The Board examined cases from Delaware, Nevada, and Pennsylvania regarding the issue we now consider. The Pennsylvania Commonwealth Court in *Raymond v. W.C.A.B. (Donolo Masonry Const.),* 659 A.2d 657 (Pa. Commw. 1995), dealt with an incarcerated employee's appeal from the Board's suspension of his benefits when he failed to attend a scheduled independent medical examination (IME) scheduled by the employer at the doctor's office. Pennsylvania law requires an employee to submit himself for examination at some reasonable time and place and to a physician selected by the employer who must pay the fees and travel expenses incurred by the employee. As in this case, the employee argued that he was willing to attend the examination but was unable due to his incarceration.

In affirming the suspension of benefits of that employee, the Pennsylvania Commonwealth Court found the responsibilities of an employer do not include making special arrangements to facilitate an IME if an employee is incarcerated and cannot submit himself to an examination. It found that a reasonable time and place would be at a physician's office or a medical facility, not a prison, especially when an employee is unable to submit himself or herself due to his or her own intentional actions. Additionally, the court pointed out that the employee did not timely respond to

the notice of the IME although the notice indicated a willingness to consider an alternative date. 659 A.2d at 660.

The Nevada Supreme Court addressed the same issue in *SIIS v. Campbell*, 108 Nev. 1100, 844 P.2d 795 (1992). That court subsequently granted a rehearing in the case and ordered the above opinion to be withdrawn in 109 Nev. 405, 848 P.2d 1068 (1993). On rehearing, the court considered whether TTD benefits may be suspended during the time in which a claimant is incarcerated. 109 Nev. 997, 862 P.2d 1184 (1993).

Under Nevada law, TTD benefits may be suspended where an employee voluntarily refuses to receive or obstructs the completion of a required examination. In affirming the appeal officer's finding that the incarcerated employee neither obstructed nor refused to submit to an examination, the court interpreted "obstruct" as meaning a volitional act with intent to hinder a required examination. It reasoned this interpretation was in harmony with its policy of construing workers compensation statutes liberally for the protection of the employee. 109 Nev. at 1000.

The Delaware Superior Court in *Foraker v. NVF Company*, 358 A.2d 730, 731-32 (Del. Super. 1976), reversing a determination that benefits be suspended, held that an employee's incarceration pending disposition of criminal charges did not constitute a refusal or obstruction of the examination. Delaware law provides that an employee's refusal to submit to the employer's examination or obstruction of such examination deprives him of the right to compensation. The court reasoned that suspension of benefits based upon an employee's incarceration prior to a determination of guilt ignores the presumption that an accused person is innocent until proven guilty. 358 A.2d at 733.

As the parties point out, all of these cases are distinguishable from this case in some fashion. *Raymond* involved the additional circumstance that the incarcerated employee failed to respond to the IME notice which provided the possibility for an alternative date. *Campbell's* interpretation of "obstruct" to include an intent element was based on Nevada's policy of construing workers compensation statutes liberally for the protection of the employee, while the Kansas policy is to apply the statutes impartially to both

employers and employees. K.S.A. 44-501(g). *Foraker* involved a suspension of benefits prior to the employee's adjudication of guilt and the effect it would have on the presumption of innocence. In this case, the employee's convictions were final at the time of the scheduled examination.

Distinguishing factors aside, this court still must determine whether the provisions of K.S.A. 44-518 require suspension of the employee's benefits as a matter of law. The employer argues that this court's discussion of public policy in *In re Marriage of Thurmond*, 265 Kan. 715, 962 P.2d 1064 (1998), is consistent with the *Raymond* court's approach to suspending benefits. In *Thurmond*, this court concluded that incarceration, standing alone, was not legal justification for the suspension or modification of that parent's child support obligation. Looking at case law from other jurisdictions, the court identified three available methods to make this determination: (1) No justification, (2) complete justification, or (3) one factor to consider. 265 Kan. at 720. In discussing the no justification rule, this court stated:

"The specific language utilized in some of the cases supporting this rule to the effect that incarceration is similar to quitting a job to avoid paying child support and that in both situations, the inability to pay is 'voluntary' stretches reality a bit. Most inmates would have difficulty accepting the concept that their incarceration is to be considered 'voluntary.' It is more accurate to say that a reduction of income from a cause beyond the obligor's control (such as illness, injury, lay-off, etc.) should be considered differently from those which arise from causes within his or her control. Criminal activity foreseeably can lead to incarceration and such activity is obviously within an individual's control. Public policy considerations heavily favor the no-justification rule." 265 Kan. 729.

Justice Allegrucci was joined by Justice Six in dissenting from the majority opinion, finding that he would adopt the "complete justification rule" because it would allow the district court to modify the support obligation based upon the reality of the parent's financial situation. 265 Kan. at 730.

The employer argues the Board erroneously applied a complete justification rule in this case by finding that the employee's incarceration was legal justification for him to avoid his legal obligation to appear for a medical examination. The employee distinguishes

the child support public policy considerations in *Thurmond* from this case in which the employer was seeking to be relieved of its workers compensation statutory obligations based upon an employee's unrelated incarceration. The employee points out that child support public policy considerations would be frustrated if the employer prevailed because child support obligations may be attached and paid from workers compensation benefits. See K.S.A. 44-514.

The employee is correct that the public policy considerations underlying child support in *Thurmond* bear little similarity to the policy underlying workers compensation benefits at issue in this case. *Thurmond* dealt with the effect of incarceration on the prisoner's legal obligation to *pay* child support rather than a prisoner's right to *receive* workers compensation benefits for an injury unrelated to his incarceration.

"It is the intent of the legislature that the workers compensation act shall be liberally construed for the purpose of bringing employers and employees within the provisions of the act to provide the protections of the workers compensation act to both. The provisions of the workers compensation act shall be applied impartially to both employers and employees in cases arising thereunder." K.S.A. 44-501(g)

K.S.A. 44-518 is designed to preserve the employer's right to discovery through examination by a doctor of the employer's choice. The examination provided for in 44-515 is the discovery tool for the benefit of the employer. It provides the employer an opportunity to seek independent medical opinions of an employee's condition during the pendency of the employee's claim for benefits. The statute does not provide that the employer has an absolute right to an examination at the time and place of its choosing; rather, the examination must be at a reasonable time and place. In protecting the employer's right to this discovery, K.S.A. 44-518 provides that if the employee refuses, obstructs, and prevents the employer from exercising its option for examination under 44-515, the employee's right to payment of compensation shall be suspended until the employee submits to an examination and such examination is completed.

The very nature of the language used in 44-518 suggests that before suspension of benefits, there must be an affirmative act on the part of the employee to frustrate the employer's discovery or examination. In our interpretation of 44-518, we follow a familiar maxim of statutory construction which provides: "Ordinary words are to be given their ordinary meaning, and a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. [Citation omitted.]" *GT, Kansas, L.L.C. v. Riley County Register of Deeds*, 271 Kan. 311, 316, 22 P.3d 600 (2001).

Black's Law Dictionary defines "refusal" as "[t]he act of one who has, by law, a right and power of having or doing something of advantage, and decline it." Black's also indicates that the declination of a request or demand, or the omission to comply with some requirement of law, be *"as the result of a positive intention to disobey."* (Emphasis added.) *Refusal* is often coupled with "neglect," but Black's notes that neglect signifies a mere omission of a duty *"while 'refusal' implies the positive denial of an application or command, or at least a mental determination not to comply."* (Emphasis added.) Black's Law Dictionary 1282 (6th ed. 1990).

"Obstruct" is defined as "[t]o hinder or prevent from progress, check, stop, also to retard the progress of, make accomplishment of a difficult and slow. . . . To impede." Black's Law Dictionary 1077 (6th ed. 1990).

The ordinary meaning of the words used in K.S.A. 44-518 contemplate a positive intention to disobey and to hinder. We believe K.S.A. 44-518 contemplates circumstances where an employee makes a deliberate decision not to attend the examination or to obstruct or prevent the employer from gathering its own independent evaluation of his medical condition. Thus, the Board's interpretation that there must be an element of willfulness or intent is consistent with the ordinary meaning of the words of K.S.A. 44-518.

The employee's actions in this case were passive. He was willing to submit to the examination in Kansas City, but his circumstances prevented him from doing so. To conclude, as other courts have, that the employee voluntarily committed his or her crime resulting

in incarceration and such a past intentional choice thereby prevented him or her from attending a subsequent examination, ignores statutory language indicating an affirmative act is required on the part of the employee. We, like the Board, are unwilling to treat incarceration for the prior criminal acts as a substitute for the act of refusing to attend the examination.

Based upon the cases cited above and the clear import of K.S.A. 44-518 we, like the Board, conclude that the terms "refusal" and "unnecessarily obstructs" carry with them an element of willfulness or intent. The employee exerted no affirmative act to frustrate discovery; he simply could not go to the examination. Thus, we conclude that a prior criminal act and the resulting incarceration do not, as a matter of law, constitute a refusal or unnecessary obstruction or prevention of a scheduled examination under K.S.A. 44-518 warranting a suspension of benefits. This interpretation of 44-518 is also consistent with the underlying policy of the Workers Compensation Act (Act) to bring both parties under the protections of the Act and to act impartially thereunder.

### K.S.A. 44-515—Question of Fact

Our scope of review in regard to this question is statutorily defined by the KJRA, K.S.A. 77-601 *et seq*. The provisions of K.S.A. 77-621(a)(7) provide that this court shall grant relief only if

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act."

The determination of whether an employer has requested the employee to submit to an examination at a reasonable time and place is a question of fact. *Zimmerman v. O'Neill Tank Co.*, 188 Kan. 306, 310, 362 P.2d 10 (1961). The determination of whether the Board's findings of fact are supported by substantial competent evidence is a question of law. *Mudd v. Neosho Memorial Regional Medical Center*, 275 Kan. 187, 191-92, 62 P.3d 236 (2003).

Substantial evidence is evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing a sub-

stantiating basis of fact from which the issue tendered can be reasonably resolved. This court views the evidence in the light most favorable to the prevailing party; it does not reweigh the evidence or determine the credibility of the witnesses. 275 Kan. at 191-92.

While the employer seeks to blame the employee entirely for the added difficulty and cost in obtaining the examination, the employer fails to acknowledge its own culpability in the situation. The employer had ample time to pursue a medical examination while the employee was incarcerated in Kansas City but chose to wait until the employee was transferred to Cameron. After its physician of choice refused to go to Cameron and another physician could only go several months later at an exorbitant cost, the employer made no effort to obtain a physician in the Cameron locality. We have no difficulty affirming the Board's conclusion that under the circumstances of this case, "a reasonable time and place [for examination of claimant] would have been the correctional facility in Cameron, Missouri." The findings of fact set forth in this opinion and in the Board's decision are supported in the record. Moreover, the Board's findings of fact are supported by substantial competent evidence. We, therefore, affirm the decision of the Board.

(2) Authority of the Board to Remand on the Question of the Employee's Average Weekly Wage

The employer questions the authority of the Board to remand this case to the ALJ on the question of the employee's average weekly wage. The employer argues that the employee must, in the first instance, establish as an essential element of his claim—his average weekly wage. Absent such evidence, his workers compensation claim fails. Thus, the employer argues that remanding to allow the employee another opportunity to establish his average weekly wage is beyond the authority of the Board, notwithstanding the following provisions of K.S.A. 2002 Supp. 44-551(b)(1):

"On any such review, the board shall have authority to grant or refuse compensation, or to increase or diminish any award of compensation *or to remand any matter to the administrative law judge for further proceedings.*" (Emphasis added).

The employer also questions the authority of the Board to remand to the ALJ for the purpose of opening the record for presentation of additional evidence. The employer contends that any review is limited to the evidence in the record.

For the reasons set forth below, we conclude that there was sufficient evidence to support the initial award of the ALJ; that on appeal to the Board of this award, the Board had the authority to remand to the ALJ for presentation of new evidence and an accurate determination of the employee's average weekly wage; and that the Board on appeal correctly affirmed the modified award based upon additional findings of the ALJ reflecting the accurate average weekly wage of the employee.

Jurisdiction:

The employee challenges our jurisdiction to consider the issue of the Board's authority to remand because there were no exceptional circumstances to warrant an appeal of the Board's remand for a factual finding of the average weekly wage under *Williams v. General Electric Co.*, 27 Kan. App. 2d 792, 9 P.3d 1267 (2000).

In *Williams,* an employee obtained an award from the ALJ and the Board determined that she had not made a good faith effort to find suitable work and remanded her case for a determination of her imputed post-injury wage. The Court of Appeals dismissed the employee's appeal of this remand, finding the Board's remand was not a final order but rather an intermediate step towards resolution of all actual issues. The court reasoned that under the KJRA, the court's jurisdiction was limited to final agency actions, and remand orders are not appealable in the absence of exceptional circumstances. 27 Kan. App. 2d at 793.

This case is distinguishable from *Williams* because the employer is not appealing directly from the Board's order remanding the case. The employer reserved the issue for appeal on remand to the ALJ and exhausted its administrative remedies by securing a final order on the issue from the Board in its second appeal. See K.S.A. 2002 Supp. 44-556(a). As such, while the question reserved involves the Board's authority to remand, the second appeal of the

employee is from a Board order and decision. Thus, this court has jurisdiction to consider the appeal.

## Initial ALJ Award

Upon proper application for a hearing being filed pursuant to K.S.A. 44-534, a regular hearing was held in this case on January 12, 1999, before the Honorable Robert H. Foerschler, Administrative Law Judge (ALJ) for the Division of Workers Compensation of the State of Kansas in Overland Park. The employee appeared by telephone and by counsel. The employer and its insurance carrier appeared by counsel. The ALJ indicated in the regular hearing that the employer's motion to suspend the employee's benefits due to lack of a medical examination on behalf of the employer was to be handled at some future time.

Initially, the ALJ set forth information concerning the nature of the employee's employment, together with other jurisdictional information. In reference to the average weekly wage, the ALJ stated:

"There was no agreement, however, about average weekly wage although it was alleged that Mr. Neal's wages were $11.30 an hour plus overtime and a suggestion of $440 for the wage was made, but not agreed to. He was, however, paid about three weeks of temporary total disability totaling $983.12 and was not claiming any adjustable or any additional weekly benefits, but did request that the rating [award] be determined from the decision about the average weekly wage. . . . So the only issues remaining to be determined in this matter are really what Mr. Neal's average weekly wage was for this accident or injury and whether or not— once that's determined then probably an adjustment of the weekly temporary benefit rate will be made, and then a decision . . . . Does that cover about all the issues that anyone can suggest for this thing now?

"MR. KOLICH: I believe so, Judge. One clarification on the issue regarding nature and extent. It's my understanding that the claimant is not claiming compensation for a work disability, but rather the claim is simply for a functional impairment."

After further discussion on the record, the following was stated:

"[ALJ]: Okay. What needs to be done next? Do we need to set some terminal dates for conclusion of the matter? We better make it somewhat liberal since we've got some—

"MR. TREASTER: Judge, we have a deposition of Mr. Neal, that hopefully you have the original of, that was taken November 13, 1998 by telephone and Mr. Kolich participated in that. *And we wanted to submit that as the testimony of Mr.*

*Neal. And, you know, if Mr. Kolich wants to take any additional testimony he would obviously have the right to do that and we could provide for that. We do need to take Dr. Zimmerman's testimony and we have not set a date for that, but that's really the only thing that we would propose doing on behalf of the claimant.*

. . . .

"[ALJ]: . . . . What more do we need to do today? We need to get some terminal dates. Give me some suggestions on what you're going to need to finish it up." (Emphasis added.)

The employee's counsel responded that he needed to take the deposition of Dr. Zimmerman, and the ALJ gave him until March 30, 1999. The issue of the motion to suspend proceedings was discussed, the ALJ asked counsel if they had anything further, and they replied no. The ALJ asked the employee if he had any questions, and he responded, "I haven't heard anything. I haven't. More or less I just haven't heard anything."

Counsel for the employee was informed that the employee's telephone connection had been faulty and that the employee had not heard the discussion. Counsel then summarized for his client what had been presented at the regular hearing including information that the average weekly wage had been discussed and that matter still remained an issue. At that point, both parties were aware that all the information that was to be presented on the average weekly wage was in the record. The parties appeared by counsel, and the employee appeared by telephone albeit through a faulty connection. The employee's deposition was added to the record. Dr. Zimmerman's deposition was subsequently entered. Neither party added to the record during the regular hearing.

The matter of the employee's failure to appear for the examination at Dr. Poppa's office in Kansas City by reason of his incarceration on unrelated felony convictions was taken up at a preliminary hearing by the ALJ on June 17, 1999. The parties appeared by and through counsel and argued their respective positions, and this issue as well as the entire case was complete and ready for a decision by the ALJ.

On October 27, 1999, the ALJ's decision and award was entered by written decision on all issues. With regard to average weekly wage, the ALJ based upon the record concluded:

"The admission that claimant was paid three weeks of temporary total disability totaling $983.12 suggest that the average weekly benefit paid was $327.71, slightly exceeding the $326.00 maximum at the time, and indicates an average weekly wage of $451.57 which matches claimant's assertion at the prehearing settlement conference."

The ALJ further concluded:

"The claimant is entitled to 3 weeks temporary total disability at the rate of $326.00 per week or $978.00 followed by 33.20 weeks at $326.00 a week or $10,823.20 for a 8% permanent partial general body disability making a total award of $11,801.20. As of 12/29/98, there would be due and owing to the claimant the entire sum awarded."

We note that there was some evidence in the record concerning the employee's average weekly wage. The employer, throughout the time leading to the regular hearing, was concerned with obtaining the suspension of the employee's claim by reason of his failure to appear for an examination scheduled in Kansas City. Yet, in the regular hearing, evidence was presented, albeit hearsay evidence, concerning the employee's average weekly wage. The employer did not offer any evidence at the regular hearing concerning the average weekly wage except to agree that the matter was still in issue. The employer did not cross-examine the employee upon any of the figures presented by counsel and the employee concerning the average weekly wage.

K.A.R. 51-3-8(c) provides:

"(c) The respondent shall be prepared to admit any and all facts that the respondent cannot justifiably deny and to have payrolls available in proper form to answer any questions that might arise as to the average weekly wage. Evidence shall be confined to the matters actually ascertained to be in dispute. The administrative law judge shall not be bound by rules of civil procedure or evidence. Hearsay evidence may be admissible unless irrelevant or redundant."

In its first appeal to the Board, the employer complained that the employee failed in the regular hearing to establish an essential element of his claim—his average weekly wage. It is difficult to credit the employer's argument given its failure to question the employee's contention and hearsay evidence concerning this issue. Given the presence of the employee at the regular hearing, the employer's awareness that hearsay evidence of the employee's av-

erage weekly wage had been presented, the employer's failure to question the accuracy of the hearsay evidence or cross-examine the employee on his claims regarding his average weekly wage, and, most importantly, the employer's lack of regard for the provisions of K.A.R. 51-3-8(c), we conclude that the employer was willing to have the matter of the employee's average weekly wage resolved by the ALJ on the only evidence in the record concerning the employee's average weekly wage.

The ALJ determined the employee's average weekly wage based upon the evidence submitted in the record. While that evidence may have been hearsay and may have in fact been faulty as disclosed in further appellate proceedings in this case, it was sufficient under all the circumstances to support the initial award of the ALJ in this case.

### The Employer's Appeal From the ALJ's Initial Award

The employer appealed to the Board, claiming that the employee failed to establish his average weekly wage and was foreclosed from having another chance to introduce evidence concerning his average weekly wage. The issue regarding the employee's average weekly wage was appropriately before the Board. In its findings of fact, the Board concluded that "[c]laimant did not introduce evidence of claimant's average weekly wage." This finding is not supported in the record as we have indicated above. In its conclusions of law, the Board states: "Claimant offered no evidence of his average weekly wage." This conclusion is not supported in the record. The Board recounts its understanding of what the record demonstrated concerning the employee's average weekly wage, indicating that no agreement was reached between the parties. The Board further notes that "[c]laimant did not testify to the amount of his wage and did not otherwise offer evidence of the wage." The Board's conclusion is not entirely accurate. The employee was made aware that information concerning his average weekly wage was presented at the regular hearing by his counsel. While he had not heard the assertions of his counsel because of a faulty telephone connection, his pretrial assertions were advanced by counsel concerning specific information on his hourly wage and overtime pay.

In addition, information concerning 3 weeks of TTD totaling $983.12 was discussed. In his award, the ALJ noted that information in the record "indicates an average weekly wage of $451.57 which matches claimant's assertion at the prehearing settlement conference."

The employer is in no position to challenge the ALJ determination based on the only evidence concerning average weekly wage in the record. Granted, the information, evidence, and determination of the ALJ may not have reflected the actual average weekly wage of the employee. Nevertheless, his claim under all the circumstances of this case was sufficiently established in the record to support the initial award of the ALJ. However, the Board possessed the authority to remand this issue to the ALJ in order that the employee's true average weekly wage be established.

The Board recognized that the employee's average weekly wage, as reflected in the record and by the ALJ, most probably did not reflect the employee's true average weekly wage. Recognizing the employer's complete failure to "comply with K.A.R. 51-3-8(c) because it did not provide payroll records" and some of the confusion regarding the employee's average weekly wage, the Board "in the interest of justice" determined that "this case should be remanded for further proceedings."

The employer argues that the Board had no authority to remand because it gave the employee another opportunity to establish his claim. Given our conclusion that sufficient evidence supported the initial award of the ALJ, the Board was well within its authority to remand to the ALJ for further consideration of the employee's average weekly wage. Upon remand to the ALJ, the parties stipulated to the employee's average weekly wage and the Board then affirmed the ALJ's award based upon the stipulated average weekly wage. While the Board remanded based upon its determination that no evidence was presented concerning the employee's average weekly wage, we conclude this determination was inaccurate. However, remand by the Board was authorized and did establish the true and actual average weekly wage of the employee. Thus, the final determination of the Board based upon evidence developed

upon remand is supported by the evidence and is, therefore, affirmed.

The employer further argues that no authority exists for the receipt of additional evidence before the ALJ upon remand by the Board. The employer acknowledges that K.S.A. 2002 Supp. 44-551 permits the Board to remand any matter to the ALJ for further proceedings, but it argues that the statute does not specify whether the remand may be for additional evidence or is restricted to directing the ALJ to make additional findings of fact and conclusions of law based upon the existing trial record. The employer's argument fails to take into account the evolution of the type of authority granted to the Board on appeal.

Prior to July 1, 1993, any action taken by the ALJ or the director was subject to review by the district court under the KJRA, K.S.A. 77-601 *et seq.* K.S.A. 1992 Supp. 44-556(a). The district court's scope of review was de novo but limited to the record available to the director. *Rios v. Board of Public Utilities of Kansas City*, 256 Kan. 184, 185, 883 P.2d 1177 (1994). K.S.A. 1992 Supp. 44-556(b) provided: "On any such review the district court shall have jurisdiction to grant or refuse compensation, or to increase or diminish any award of the director as justice may require."

K.S.A. 1992 Supp. 44-556(b) was interpreted to mean that the district court did not have the authority to remand proceedings to the director for the hearing of further evidence or for taking additional action. *Houston v. Kansas Highway Patrol*, 238 Kan. 192, 196, 708 P.2d 533 (1985); *Kuhn v. Grant County*, 201 Kan. 163, 167, 439 P.2d 155 (1968); see also KBA Kansas Workers Compensation Handbook, § 13.06, 13.7 (1998) ("In a workers compensation case there is no second chance to present additional evidence. Neither the district court, the court of appeals, nor the supreme court has authority to take additional evidence nor to remand the case back to the administrative law judge for additional evidence.")

However, since 1993, all final orders, awards, modifications of awards, or preliminary awards made by the ALJ are subject to review by the Board. *Nance v. Harvey County*, 263 Kan. 542, 550, 952 P.2d 411 (1997). "The review by the board shall be upon questions of law and fact as presented and shown by a transcript of the

evidence and the proceedings as presented, had and introduced before the [ALJ]." K.S.A. 44-555c(a). "On any such review, the board shall have authority to grant or refuse compensation, or to increase or diminish any award of compensation or *to remand any matter* to the administrative law judge for further proceedings." (Emphasis added.) K.S.A. 2002 Supp. 44-551(b)(1).

Both the plain language of the statute and the legislature's decision to include this additional type of review support the Board's conclusion that it had the authority to remand the case for additional wage evidence. Without qualification, the plain language of the statute states that the Board has the authority to remand "any" matter to the ALJ for further proceedings. The legislature's decision to add this catch-all phrase to the predecessor statute demonstrates an intent to grant the Board power beyond what had been previously granted to the district court in its review.

Finally, the employer argues that the Board shifted the burden of proof on the average weekly wage from the employee to the employer in applying K.A.R. 51-3-8. This regulation, however, does not shift the burden of proof to the employer; rather, it attempts to limit the amount of litigation by identifying what issues will be in dispute. To achieve this purpose, the employer must have the payroll information available to answer any questions about the employee's wage. Contrary to the employer's assertion, this is different from having the burden to prove the average weekly wage. Once it is determined that wage is a disputed issue, the employee still has the burden to prove the average weekly wage.

In conclusion, the ALJ's initial award was supported by sufficient evidence in the circumstances of this case. However, once appealed, the Board had authority to remand this case to the ALJ for the purpose of determining the accurate average weekly wage of the employee. On further appeal, the Board had authority to consider and affirm the ALJ's modified award based upon additional findings concerning the employee's average weekly wage.

Affirmed.